W. H. WHEAT AND WIFE v. W. E. OWENS AND WIFE.

The issue of a certificate and patent to the heirs of the original grantee, is without prejudice to persons beneficially interested; the patentees, in such cases, take the land in trust for the owner of the equitable title.

See this case for a comparison of conjugal and conventional partnerships.

Where the wife abandoned the husband in 1835, and lived in open concubinage with another, until the death of her husband in the same year, and there was no circumstance to bring the case within any exception allowed by the former laws, it was held that she forfeited her claim to a community interest in the headright afterwards issued to the heirs of the husband.

Error from Williamson. Suit by W. H. Wheat and his wife Frances, against W. E. Owen and his wife Eliza, to recover one-half of the headright of Sherwood J. Dover. The facts were as follows : In the year 1833, Sherwood J. Dover, then a widower with one child, the defendant Eliza, intermarried with the plaintiff Frances, in the State of Kentuckey, and during the same or the succeeding year, emigrated to Texas, bringing with him his wife and child aforesaid. After his arrival and settlement in the then province of Texas, and after he had become a permanent citizen thereof, in the early part of the year 1835, the plaintiff Frances abandoned the said Sherwood, and lived with one Joseph Martin, in open adultery, and continued to do so till sometime in the year 1838, after

the death of the said Sherwood, when she and the said Martin intermarried. The said Sherwood, in consequence of his said wife's conduct as aforesaid, took his little daughter, the defendant Eliza, and placed her under the care of Jonathan Burleson and wife, in the year 1835, by whom she was raised to womanhood, and at whose house she was married to the defendant, W. E. Owen, in the year 1851. The said Sherwood, having provided for his daughter, as aforesaid, joined the army of Texas, in the year 1835, and was killed in November of the same year, near San Antonio.

On the 22d of January, 1838, on the application of Jonathan Burleson, guardian of the heirs of Sherwood J. Dover, a certificate issued for a league and labor, which was located and patented on the land in controversy.

The said Joseph Martin, in the year 1838, by virtue of his marriage with the said Frances, obtained a headright for a league and labor ; and after his death, the said Frances received her community interest therein, sold it, and afterwards intermarried with the plaintiff, W. H. Wheat.

*J. Fisk*, for plaintiffs in error.

*Claiborne* and *O'Conner*, for defendants in error.

HEMPHILL, CH. J. The claim of Mrs. Wheat is founded upon the supposition that the marriage between her and Dover not being legally dissolved before his death, she is entitled to a community share of the headright lands granted to the heirs of Dover, he being regarded as the head of a family ; and we may observe here that the fact of the certificate being issued to the heirs of Dover cannot affect her rights, for, if she be entitled, they would hold in trust for her, to the extent of her interest. The question is whether, by the wilful abandonment of her husband and living in adultery with another, she forfeited her share of the ganancial property acquired during matrimony.

In examining this subject, we derive but little aid from general rules in relation to partnerships. The conjugal partnership, though agreeing in some, differs in many essential particulars from the conventional. The only object of the latter is gain. The former has higher and more important purposes, essential in fact to the welfare and even the very existence of society; the acquisition of profits being but an incident to the union. (Febrero Novissimo, Tom. 1, p. 106.) In the conventional there is equality between the partners, and their gains are in proportion to their respective shares of stock and services. But not so in the conjugal. The division is equal, although one may have brought in the greater part, if not all of the property from which the profits are derived, or may have contributed all his skill, industry and services unaided by the other, and perhaps embarrassed by his or her idle or wasteful habits. (Ib.)

Continued absence would defeat a claim, in an ordinary partnership, to a share of the profits, but the absence merely of the wife will not forfeit her share of the matrimonial gains. This doctrine is illustrated and enforced in the case of Cole's widow v. his executors. (7 N. S. 41.) The husband, in this case, resided some ten or a dozen years in Louisiana; the wife, though never removing from New York, was held, on his death, to be entitled to one-half of the property acquired in Louisiana. Where the wife has never cohabited with the husband, or where they live separately under a lawful decree or dispensation, the community of property does not exist. (Escriche, BIENES GANANCIALES; Febrero Novissimo, vol. 1, p. 111, 114.)

It appers, then, that although probably the design of partnerships in acquests and gains during matrimony, was, that impartial justice might be done to the parties—that one should not be despoiled to the aggrandizement of the other, and although it be generally true, that both parties contribute to the acquisitions, yet a partner who does not contribute either means or labor, and who may even·live apart from the other,

is entitled, on the dissolution of the marriage, to a share of the gains.   The separation, then, of Mrs. Wheat from her husband, had it been by mutual consent, would not have affected her right in the community property, although this may have been derived solely from the efforts of the husband; nor would she have lost her right, had she been forced by cruel treatment, to the separation, or been ejected from her home, without just cause, on the general principle, that as between parties, the misconduct of the one that is culpable, shall not operate to the prejudice of the innocent.   (Escriche, BIENES GANANCIALES; Febrero, Tom. 1, p. 114.)

But in this case no blame can attach to the husband.   The abandonment by the wife was her voluntary act, in flagrant disregard of the obligations of the matrimonial union and her duties as a wife, and it becomes a question whether her wilful desertion alone, without regard to her subsequent misconduct, should not deprive her of any share in the gains subsequently acquired by her husband.   If it be true—and the proposition is stated by the commentators as indisputable—that a wife, if forced to separation by the cruelties of her husband, will not forfeit her share in the gains subsequently acquired by him, the converse of the proposition—there being no principle of law to the contrary—must be admitted, viz: that such right will be forfeited by her wilful abandonment of her husband in violation of her conjugal duties and relations.   The effect produced by wilful abandonment, upon the rights of the wife, is not very distinctly stated in the laws or authors to which we have been referred, or which have been consulted; but it is believed that the wife, by such misconduct, must forfeit her right in the community, at least in the gains subsequently acquired, and that such is a necessary consequence of the general rule that the innocent party shall not suffer for the fault of the guilty.

Escriche, in his dictionary, under the head of "Married Woman," (muger casada) states that she is under obligation to

cohabit with her husband, and to follow him to the place of his domicil, but declares that if she should abandon her home, it would be useless to invoke the public authorities to compel her to return, and that the husband has no other means of forcing her return, except that of refusing her alimony and a participation in the matrimonial gains. This would imply that by abandonment alone, if persisted in, the wife would incur a forfeiture. And, under the head of Divorce, the same author lays down the general rule that the innocent party would continue to share in the gains subsequently acquired by the other, though the guilty could claim no such correlative right in the gains of the other.

It appears, then, that the wilful desertion by Mrs. Wheat, of her husband, would have alone been sufficient cause to debar her of any right in property subsequently acquired by him. Whether she might not, under such circumstances, be entitled to alimony from her husband, is another question. Escriche infers from the Cedulas of the 22d March, 1787, and 18th March, 1804, that after divorce, the husband must allow alimony to the wife, provided her necessities require it, although her conduct may have given occasion for the divorce. (*Verbo Alimentos.*)

But there is a stronger objection to the right of Mrs. Wheat than mere desertion of her husband and her home. She subsequently lived in open and flagrant adultery with another. The penal consequences of adultery were, under the ancient laws, of much severity, but have been ameliorated by the later legislation in Spain. It was anciently punished with death, with public whipping, (L. 15, Tit. 17, Part. 7;) and by some law, the parties guilty were subjected to the disposition and vengeance of the husband. (L. 1. Tit. 7. lib. 4. Fuero Real; L. 1. Tit. 28, lib. 12, Nov. Recop. ; L. 5, Tit. 28, lib. 12, Nov. R. ; L. 4, same title and book.) These punishments have fallen into disuse, and the husband now who commits adultery is subject only to banishment or fine, and the wife to seclusion in a

monastery for a shorter or longer period, according to circumstances. (Ecscriche, *Verbo Nutentied*.) One of the consequences of adultery by the wife seems always to have been the loss of her share of the ganancial property. (Escriche, BIENES GANACEALES; L. 15, Tit. 17, Part 7; Feb. Nov. Tom 1. p. 111; L. 11, Tit. 4, Lib. 10, N. R.) This, however, she might regain, if her husband was reconciled to her within two years, but if he did not forgive her, or if he died before the lapse of two years, then she was confined to the monastery for life. (L. 15, Tit. 17, Part 7.)

There are many exceptions under which the wife would be exempt from the punishment imposed by the laws. These will be found enumerated, and the whole subject fully treated by Escriche, under the head of *Adulterio*. (L. 4 and 7, Tit. 17, Part 7; L. 8, same title and book; L. Tit 7, Lib. 4. Fuero Real; L. 4, Tit. 28, Lib. 12, Nov. Recop.) But there is none which would apply to the case of the plaintiff, or save her from the loss of property inflicted by the law. The exceptions are generally, where some fault was to be attributed to the husband, or where he showed a disposition to forgive the offence, or where the circumstances were such as made the act of the woman virtually one of innocence. No such circumstances appear in this case; and under a fair construction of the laws in force during the existence of the marriage, the plaintiff would not have been entitled to share in this headright as a part of the community property.

In Armstrong v. Stelber, 3 Annual, 413, in which the wife claimed her marital fourth, which was given her by law, where she is left by the death of her husband in necessitous circumstances, it was held that having abandoned her husband for several years to live in concubinage with another, she was not entitled to come within the benefit of the provision.

Besides, at the death of Dover, Mrs. Wheat could not be said, with propriety, to form a part of a family which she had repudiated and scandalized by desertion, and by living in open and

shameless adultery with another. Her presence was not necessary to constitute a family. This might consist of father and child, and the family was so constituted at the death of Dover. His child, being an orphan and a resident of Texas, was, under the Constitution, entitled to such lands as were due to Dover at the time of his death.

Judgment affirmed.