ELIZABETH ROUTH v. W. A. ROUTH

(Case No. 1183.)

1. MARITAL RIGHTS — COMMUNITY PROPERTY.— E., the second wife of her deceased husband, while living in another state, and before his removal to Texas, was guilty of such outrages toward him as rendered their living together insupportable. By mutual consent, the husband separated from her without a decree of divorce, and after removing to Texas with the children of his first marriage, he married a third time to one who was ignorant of the fact that he had then a wife living. Afterwards, during coverture with his third wife, he acquired real estate in Texas, and died. In a suit between E., claiming a community interest in the land thus acquired in Texas, and a child of the first marriage, held —

(1) The matrimonial relation, when once formed, continues until terminated by death or judicial decree.

(2) That relation, when once established, secures to the wife a community interest in all the property that may be thereafter acquired by either of the parties, except such as may be obtained by gift, devise or descent.

(3) The rights of the parties resulting from the marriage relation are fixed by statute law, and have remained unaffected by civil law rules applicable to putative marriages since 1840, when the common law and the marital rights system of Texas were both adopted by act of the republic of Texas.

(4) The separation of E. from her husband did not, under the circumstances above stated, work a forfeiture of her subsequently acquired community rights to land purchased by him in Texas.

(5) The rights in the estate of the last wife, who married in ignorance of the former subsisting marriage, are not involved in this decision.

APPEAL from Fannin. Tried below before the Hon. John C. Easton.

This was a suit brought by Elizabeth Routh in the year 1871 against the children of Jonathan Routh, deceased, in their capacity as devisees and legatees under his last will and testament, for the recovery of her equal one-half interest in all the property possessed and claimed by the testator at his death, in her right as wife during his life, and the acquisition by him of the said property, by virtue of her community interest therein. During the progress of the suit the plaintiff discontinued as against some of the original de-

fendants, for the reasons, as stated in her pleadings, that adjustments of the interests claimed by them had been satisfactorily agreed on. This litigation was thus narrowed down to her claim against the defendant W. A. Routh, the son of Jonathan Routh by a marriage which had been consummated between said Jonathan and said W. A. Routh's mother, before the marriage with the plaintiff. W. A. Routh was the devisee under the will of his father, together with the other defendants. Plaintiff, in her last amended petition, alleged that he claimed a certain eighty-acre tract of land therein described, with the improvements thereon situate, and she prayed for a partition thereof and for damages for use, occupation, etc.

The facts developed by pleading and evidence showed that the plaintiff and Jonathan Routh, deceased, intermarried in the state of Illinois in the year 1838 or 1839, each having been before married, and each having children by such former marriages; that they lived together until 1844 or 1845, and never did live together nor in the same state afterwards. Jonathan Routh left his wife and their three children which were born to them during their marriage, in 1844, came to Texas, and returned to his former home in Illinois in the spring of 1845, and remained there until the fall. He again left for Texas, bringing with him the children of his first marriage. The plaintiff's testimony, as well as all the other evidence in the case, shows that the departure of Jonathan Routh from Illinois was intended by him as an abandonment of his wife; that he had told her so before he left, and that she knew it otherwise from his conduct. She stated in her depositions that he made no effort to induce her to accompany him. Whether she desired to remove with him, or intended to follow him, with or without his consent or wish, does not appear. She and her children, at all events, remained at their home, where they continued to reside, and never did remove to Texas. As to the causes which led to the separation between them, the defendants alleged that they consisted of such cruelty on the part of the plaintiff towards the children of Jonathan Routh by his former wife, and towards himself, also such outrages and excesses, as to render their living together insupportable to him. There was evidence tending to sustain those allegations, and also evidence to rebut that which was offered by the defendant on that subject. The evidence plainly showed, however, that from some cause or other, dissatisfaction existed at the time of the separation, on the part of the deceased, concerning his domestic relations; that he intended to separate himself from his family by a removal to

Texas, leaving his wife and her children behind him; and that neither he nor his wife contemplated acquiring a joint and common home in this state.

Jonathan Routh married Nancy Thompson in Fannin county, Texas, in the year 1852, with whom he lived as his wife until his death in 1864. The lands in dispute were all acquired subsequent to the date of their marriage and during its existence.

The defendants answered by general denial, and special answer, setting up as a defense that the testator was forced to leave the plaintiff on account of the conduct before referred to, which rendered his living with her insupportable, and that Nancy Thompson had married him in ignorance of the existence of a former wife, and that it was unknown to her, up to the time of said Jonathan's death, that he had, living, another wife. That her marriage and living with him as his wife was in good faith; that she was such in fact and in law; and that her marriage with him was duly celebrated and solemnized under and according to the laws of Texas; that she with said Jonathan had acquired together the land in controversy, and that the plaintiff had contributed nothing whatever towards its acquisition.

The plaintiff excepted to the sufficiency of the answer, and the exceptions were overruled.

The marriage with Nancy Thompson was proved as alleged, and there was no evidence tending to show knowledge on her part concerning the existence of the plaintiff at the time of her marriage in 1852 or afterwards, or that Jonathan Routh had ever been married to her.

The cause was tried before a jury, who rendered their verdict for the defendant, and judgment was rendered accordingly.

The plaintiff appealed, and assigned as error:

1. The overruling of her exceptions to the defendant's answer.

2. The rulings of the court in admitting certain testimony, specified in several bills of exceptions.

3. The giving of certain charges by the court designated as numbers 4, 5 and 6, and in giving an instruction to the jury asked for by the defendant, designated as No. 2.

4. In overruling plaintiff's motion for a new trial.

The several charges referred to in the assignment of errors were lengthy and need not be stated in full.

*Richard B. Semple* and *R. W. Campbell*, for appellant.

*Throckmorton, Brown & Bro.,* for appellee.

I. Appellants' counsel rely upon the rules of the common law to determine their rights. If that law should govern they have no claim, for under it no such right ever existed, and consequently it has no rule or principle applicable to this case. It is impossible for the common law to govern a case or determine a right which was never known to arise or exist in common law countries. The common law as applicable to marital rights was never in force in Texas. Bradshaw *v.* Mayfield, 18 Tex., 29, last paragraph.

II. There can be but one community. Either the first or last wife is entitled. A right in one wife excludes the idea of a right existing in the other.

III. If appellant was not entitled to recover, as against Nancy Routh, the community interest, then the action of Nancy in renouncing that right could confer no rights upon appellant that she did not possess before. This proposition is so clearly correct that we will not consume the time of the court in argument upon it.

We will not present an argument upon the presumptions which would exist in favor of innocence under the circumstances of this case. Every presumption would be indulged in favor of the legality of the marriage with Nancy Thompson. The common law authorizes a presumption of death upon an absence of seven years, but it would be presumed on much shorter time to support innocence. A presumption of divorce would likewise be indulged to protect the innocent party. Carroll *v.* Carroll, 20 Tex., 731; 1 Bish. Mar. and Div., secs. 432, 453, 455, 457; 15 Tex., 241. Thus we see that every presumption is against the claim of appellant.

The community rights of the husband and wife are founded upon the idea of mutual contributions to the acquisition of the property. 23 Tex., 28. It has been found necessary to preclude all inquiry upon that subject so long as the parties continue to live together. When, however, separation takes place, and the property is the product of the labor of one alone, the rights of the conjugal partners are made dependent upon the rights acquired by innocent third parties, and upon the cause of the separation. It becomes important in such case to ascertain who caused the breaking up of the marriage relation. The innocent must be protected, but the culpable will not be sustained in a demand for participation in the fruits of the industry of the other party.

It is not a matter of surprise that, in the early settlement of Texas, cases like the present should have occurred. The great efforts to induce settlement brought people from almost every state

in the Union and many portions of Europe together in this new country. That some men should have taken advantage of the occasion to rid themselves of unhappy domestic ties, and that others should have become indifferent to former obligations, is natural. The unmarried women of the new population being innocent of a knowledge of these circumstances, entered into marriages in good faith, and throughout a life-time were good and faithful wives and mothers. Such was the case with Nancy Thompson, whose innocence is one of the clearest propositions in the case. The moralizing of counsel upon the protection due to society is illy applied to the facts of this case. The implied imputation of being a mistress is sadly out of keeping with the facts.

Nancy Thompson was ignorant of the existence of any impediment to her marriage with Jonathan Routh, and in good faith and innocence entered into marriage with him under the forms of law. The counsel call this a *guise* marriage, but the law, more just and charitable, terms it a putative marriage.

IV. What are the rights of a wife who in good faith enters into such a marriage, and during the marriage relation discharges all of the duties of wife and aids in the acquisition of property? Counsel claim that hers are only the rights of a mistress, who with knowledge of a former wife and in disregard of the laws of God and man, enters into an illicit cohabitation. Fortunately such is not the law of this state.

We have ample adjudications in Texas upon this subject, but we refer the court to Clendening *v.* Clendening, 3 Mart. (La.), N. S., 438, in which the rights of the *putative* wife are clearly defined.

In our own state we have a number of decisions upon this subject which leave no doubt as to what the law is. We refer the court to Smith *v.* Smith, 1 Tex., 621; Lee *v.* Smith, 18 Tex., 141; Carroll *v.* Carroll, 20 Tex., 731; Babb *v.* Carroll, 21 Tex., 765. The last case turned upon the colonization laws of Texas, and is not so clearly in point as the others; in fact it is only claimed to be analogous in doctrine. But an examination of the first three will show that they are directly in point, and positively decisive of the question under discussion. Since the introduction of the common law the validity of the marriage relation would be determined by its rules, but not so the property rights of the parties.

*W. A. Evans*, also for appellee.

WALKER, P. J. COM. APP.— The first assignment of error presents the question whether the facts alleged in the defendant's special an-

swer constitute a bar to the community rights of a legal wife in property acquired by him with another woman whom he has married pending the existence of a former valid one; the last wife being ignorant of its existence or continued subsistence, and the property constituting the community of gains having been acquired by the joint labor of the partners in the last marriage.

The defendant's answer does not deny the plaintiff's allegations, that she was lawfully married to Jonathan Routh in the state of Illinois before his marriage with Nancy Thompson in the state of Texas, but admits the plaintiff's relation to Jonathan to have been as she alleged it, and seeks to avoid the legal effect thereof by the following facts, viz.: outrageous conduct and cruelty of such a character as rendered it insupportable to Jonathan Routh to live with her; that the plaintiff and her husband consented thus to separate, and that it was at her request and order that he should leave their home, which consisted in premises which belonged to her; and, indeed, that she thereby forced him to leave her by both her ill-treatment towards him and by refusing to allow him to remain on the premises where they lived; and the additional fact that after thus leaving he married another woman, with whom he lived as his wife, and by whose joint labor and industry he acquired the property in controversy, she being ignorant of the existence of the plaintiff or her marriage up to the date of the death of said Jonathan.

The question here presented is not whether the acts of the plaintiff were such as to have entitled her husband to procure a decree of divorce against her, but it is, whether her acts towards him, their consent and agreements to live apart, and his subsequent marriage, had the effect to so operate upon her marital rights to property as to exclude her from the partnership which the law establishes between husband and wife. It is quite certain that those facts do not have the effect to annul and dissolve the matrimonial relation itself; it will survive until the death of one or the other, unless it shall be terminated by a judicial decree. Will it thus survive, and its legal incident as to rights of property terminate, by reason of the facts stated in the answer of the defendant, is the true question.

The above stated simple and inexorable rule as to the duration and continuance of the marriage relation is the doctrine and principle of the common law, which is the law which governs in this state in determining the nature and effect of a contract of marriage. There are several decisions of our supreme court which have determined conjugal and matrimonial rights of parties which had their origin under the Spanish law, which gave, under the rules and limit-

ations prescribed by it, effect to a second and putative marriage, whilst the partners in the first were still alive and the marriage between them undissolved. Lee v. Smith, 18 Tex., 145; Smith v. Smith, 1 Tex., 621; Nichols v. Stewart, 15 Tex., 233. But the laws under which such cases have been determined cannot be invoked, nor can those decisions furnish reason or authority to ascertain the effect of a putative marriage under a system of law which recognizes but one valid and subsisting marriage to continue and endure until death, or until it is dissolved by judicial decree.

The validity under the Spanish civil law of a putative marriage carried with it the ordinary consequences of legality; it being a lawful marriage, the contract established, therefore, a community of rights between the parties to it; its legality was essential to induce that consequence.

The converse must be likewise true,— that if it was not a lawful marriage, the incident of community rights, which belong only to a lawful conjugal partnership, will not attach to it.

The law of our state then impresses upon the marriage relation inflexible and continuous durability, and at its formation, *ipso facto*, establishes a community of interest in all property that may be thereafter acquired by either of the matrimonial partners, except that acquired by gift, grant or descent. Under our law it may be said, as it is expressed by the Louisiana civil code, that every marriage superinduces, of right, partnership or community in all acquisitions. This conjugal partnership is not established upon the basis of equality of contribution of labor or capital by the parties to it, and it exists and is enforced under principles which recognize perfect union and equality of enjoyment of gains, and the division thereof, regardless of all inequalities induced by accident, misfortune, disease, idleness, or even wasteful habits of one or the other of the spouses. Such was the attribute assigned to this system by the Spanish civil law. See Wheat v. Owen, 15 Tex., 243.

Judge Porter, in Cole's Wife v. His Heirs, 7 Mart. (N. S.), 49, remarking upon this subject, said: "There are few, we believe, who think at the present stage of society that the wife contributes equally with the husband to the acquisition of property. If such cases exist they are exceptions to the general rule. And yet in this state neither idleness, wasteful habits, nor moral or physical incapacity, would deprive the wife of an equal share in the acquests and gains; for our code declares that every marriage in Louisiana superinduces, of right, partnership or community in all acquisitions." Such, also, he proceeded to add, was the rule in Spain.

We have adopted this civil law rule as it applies to the marital relation, engrafting it upon our common law contract of marriage, which, as we have shown, recognizes no second contract of that character, nor conjugal relation with other persons, during the continuance of the lawful marriage, unless the relation is lawfully dissolved.

In adopting the community system, as it may be termed for convenience of expression, neither the civil law governing the subject of marriage, nor the entire system of acquests and gains, was made a part of our law. The enactments which regulate the subject in this state are specific and definite statutory rules, and the civil law is not incorporated with them, nor is it further accepted than as it may have been enacted in the statute. Therefore the qualifications and modifications of the operation of the community system in civil law states, as Louisiana, or in civil law countries, or those under civil law jurisdiction, as Spain, France, and Texas; as it once was, will not have application in determining how far marital rights to property claimed under a marriage which is governed by common law principles, will be affected by a second or putative marriage recognized as valid under the civil law.

Reference to decisions made upon the civil law governing the marital rights of parties to property shows that the terms of that law itself provided for the forfeiture of rights in certain specified cases.

In the case of Wheat v. Owen, 15 Tex., 241, the abandonment by the wife of her husband and living in flagrant adultery with another man was held, under the Spanish civil law, to forfeit her claim to a community interest with her husband in a headright grant. The decision being made upon the Spanish civil law applicable to citizens of Texas in 1835, cannot be considered as decisive of the principles there held, as applied to the laws of Texas after the year 1840, when the common law and marital rights system were adopted together by the same act of congress. But the learned commentaries of civilians which have construed provisions of their own system of marital rights, unquestionably are to be considered with the highest respect in the construction, meaning and interpretation of such parts of our system as are borrowed from theirs. And the decisions which have been made by the learned supreme court of Louisiana, so far as the same by analogy can be made to apply to subjects common to both states, our own supreme court has always referred to with that deference and respect which the learning and ability of Louisiana's eminent civilians so well deserved.

In the present state of our decisions, therefore, it may be concluded that there has not, as yet, been laid down a rule whereby to determine the limits within which the wife is secure against the forfeiture, by her fault or misconduct, of her statutory right to a share in the community. Her *status* as wife is fixed; the right of property she acquires, the duties and disabilities imposed upon her by the marriage, are precisely defined, but neither by dicta or decision has it yet been determined what acts, facts, or circumstances, while the duties, disabilities and burthens of the contract still attach to her, shall divorce her from the rights of property she acquired by the same contract. The facts of this case do not require us to establish that important boundary line in the separation of these important rights more definitely, if it should be drawn, than to determine the question in a negative form, without attempting to prescribe a rule or principle for the entire subject under other phases and facts. The principle referred to, however, is intimately associated with the case before us, and with the operation of the principle that marriage attaches to it as a sequence the continued right of the wife to an equal interest in the community, until that right is, in some mode recognized by the law, forfeited; and with the unquestionable proposition that the existence merely of cause for divorce does not necessarily impair her marital rights to property; which rights coexist with the contract of marriage — a part of its essence — irrespective of any mere balance sheet to be struck between herself and her husband on account of their respective moral or conjugal merits or demerits, or that would show as a debit against her, that her husband may have had just grounds, which he had never legally asserted, for terminating by law his relations with her.

Slight reflection, even, is sufficient to suggest the difficulties that would attend the effort of courts to establish, on consistent and harmonious principles, rules to forfeit for causes of divorce, and for delinquencies to matrimonial obligations, marital rights of property without encroachment upon the province of the law-making power; and also without being involved in the most serious embarassment in resting them upon any other than their own arbitrary selection of the particular circumstances under which they should be applied. The varying course of uncongenial married life, its bickerings, quarrels, wrongs, sometimes mutually suffered, its condonations, and fresh ruptures and recurring returns to mutual respect and love, when employed as a basis and standard to regulate the rights of the parties in the financial branch of their partnership, presents a medley of incongruous elements from which no legal or equitable rule

could be applied consistent with either the policy of the law governing the domestic relation of husband and wife, or the relative rights of both of the parties to property under our community system.

Under the common law there exist well defined rights of husband and wife respectively to property owned at and after the marriage. The husband acquires thereby the personal property of the wife; her *choses in action* if reduced to possession; he has his tenancy by the curtesy, and she has her dower. These rights depend upon marriage and are incidental to it; they are not affected by the casualties of each other's faults or vices, even should they afford ground for divorce; nor does divorce or causes therefor work a forfeiture. The earnings of the wife, produced by her own labor or skill, belong in the most absolute sense, says Mr. Bishop, to the husband; and if, for instance, there is a sum due for such earnings, it is his *chose in action* and not hers; and on the death of the married pair, his legal representatives, and not hers, are entitled to sue for and recover the same. And at common law, if the husband and wife live apart, he can collect by suit for his own use her personal earnings. Bishop's Law of Married Women, sec. 212; 8 Gray, 177. And where the husband deserts his wife, or permits her to live apart from him though he does not desert her, or commits any matrimonial offense which justified her in withdrawing from cohabitation, he leaving her thus alone without her fault, and leaving her with the power to earn money, and leaving nothing else for her maintenance, still, where the courts in common law jurisdictions have allowed her, under such circumstances, to retain her earnings, have done so (as in Pennsylvania) upon the full recognition of his legal right to such earnings, and the implied gift thereof to his wife, upon the application of equity principles. Id., sec. 213. But it is also held as to such earnings, when husband and wife live apart, that "they do not become the property of the wife, even *in equity*, without a clear, express, irrevocable gift, or some distinct, affirmative act of the husband divesting himself of them or setting them apart for her separate use. Id., sec. 212; Skillman *v.* Skillman, 2 McCarter, 478, 481. The rights secured to husband and wife under our system are of like nature, though essentially differing in particulars, and the absoluteness of the respective rights of the parties under either system, and their continuance and permanency, seem to rest much upon the same foundation. Our supreme court has thus far shown a willingness to pretermit, in advance of the necessity demanding it, the expression of an opinion as to what

circumstances will be sufficient to deprive a wife living apart from her husband of her community interest in property acquired by him in this state after their separation. Henderson *v.* Ryan, 27 Tex., 674.

"The right of the surviving wife," Chief Justice Moore said in Newland *v.* Holland, 45 Tex., 590, "to her interest in the community property, or her distributive portion of the separate estate of her deceased husband, grows out of and depends upon the existence of the marital relation between the parties, and not merely upon continued existence of the family. It may be that by the separation the community interest in future gains will cease; but certainly it does not work a forfeiture in such as have been previously acquired. And the mere withdrawal of the wife from the husband and continuance to live separate and apart from him, however unjustifiable and improper her doing so may be, does not operate, and cannot be treated as tantamount to a severance of the marital relation. Though the husband may have good cause for annulling the marriage, evidently, unless he chooses to do this, the mere improper and wrongful withdrawal by the wife, and her living apart from him, cannot have this effect. And if he does not choose, by his will, to deprive her of the distributive interest in his separate estate which the statute gives her in the absence of any testamentary disposition of his property by her husband, it is not conceived that the court has any power to do so."

These views, so far as they relate to kindred questions, seem to be in harmony with the general tenor of those which we have advanced on this subject, and indicate that it is at least not *settled* law that the separation by the wife, improperly, from her husband, will have the effect necessarily to determine from that time her community interests in future gains. However that principle of law may or ought to be established in its application to a wife who thus places herself in fault, we are of the opinion that there is no fact alleged in the defendant's answer which can have the effect to impugn her community rights. The defendant's answer shows that the husband abandoned the plaintiff because of her misconduct, and that he did so willingly, and also that the plaintiff was not less urgent and desirous for the separation. Nothing is stated to imply a desire on his part to either remain with her, or to take her with him; it states virtually a case of mutual dissatisfaction, provoked greatly by the wrongful acts of the wife, which might or might not have been sufficient cause for a divorce, if he had sought to obtain it. But it does not pretend that he desired to dissolve by law the

relation between them. Their voluntary separation and living apart did not have the effect to forfeit her marital rights in the community of gains; nor did his causes of complaint against her on account of her temper, language and treatment of his children, add any legal force to the fact that they caused him to abandon her. "The law wisely refuses," said Judge Porter in Cole's Wife *v.* His Heirs, *supra,* "any legal effect to a voluntary separation of those who are bound by the most solemn obligations to live together." And in the case referred to, where the husband acquired all the property in New Orleans, during a voluntary separation of several years preceding his death, she living in New York, and never having been in the state of Louisiana, she was held to be entitled to her equal one-half interest.

When Jonathan Routh established himself in Texas his domicile became that of the wife for *all* the purposes of her beneficial interest under the circumstances of their separation. In Cole's Wife *v.* His Heirs, the able jurist who delivered the opinion showed that the writers on the civil law, where the community system prevails, who treat on the subject, all lay it down that the residence of the parties in different places will not prevent the community from existing. That the separation referred to by them, which terminates the community interest, is a legal one, and that a judicial sentence is necessary to destroy the community.

The answer showing the second marriage, and the facts attending and succeeding it, raised no equities against the plaintiff, nor did it establish as against her any legal right which could be asserted by the second wife against her. What rights the last wife may be entitled to for her services in acquiring the property in ignorance of any former wife living of Jonathan Routh, need not be considered under the issues in this case.

In the case of Carroll *v.* Carroll, 20 Tex., 742, Chief Justice Hemphill, under facts analogous to those of the present case, intimated that a woman circumstanced as the last wife of Jonathan Routh was, possesses a strong claim which might be urged to a community share of the property, on the grounds of being, as he expressed it, a " *de facto wife,*" and having contributed to the accumulation of the estate. In the state of Louisiana it was held that a woman has a right to sue the estate of a man who married her, representing himself to be a single man (his first wife being still alive), for her services in his house, the use of her furniture, hire of her negroes, moneys of hers received by him, and debts of his paid by her since his death. By the laws of Spain, it was decided in

Patton v. Philadelphia, 1 La. Ann., 98, that in such case, one-half of the acquests and gains will go to each wife. That such half is a debt due to each wife by the husband, and his heirs can claim nothing until his debts are paid. Under the Spanish law, as has been seen, such second marriage in good faith is recognized under certain limitations, and the woman is reputed a lawful wife.

It is not necessary to attempt to suggest what rule would most nearly conform to an equitable one, and be most consistent with the rights of all parties under our laws, nor shall we make such an effort.

The charges of the court as given to the jury need not be set out. It is sufficient, for all necessary purposes, to say that they were predicated upon the legal view of the rights of the parties respectively which is involved in the defendant's special answer which we have been discussing. The charge of the court made the plaintiff's right to recover depend upon whether Jonathan Routh had good cause for divorce against the plaintiff under the laws of Texas, and whether Nancy Thompson married him under the forms of law innocently and in ignorance of the existence of his former wife, and whether the property was acquired under this last marriage by the joint labor of the parties to it. These charges were contrary to the law of the case, and misled the jury to the injury of the appellant. Under the view which we have taken it is not necessary to refer to the other assignments of error.

The cases relied on in appellant's brief, and Carroll v. Carroll, 20 Tex., 731, deemed by counsel as especially in point and conclusive, will be found on examination to be otherwise. That case decided the law arising upon the facts which were in evidence only; the marriage was held to be valid upon the force of the legal presumptions which arose from the facts which were established. That case did not, however, determine that the marriage which was there in question would have been held valid if the presumptive evidence had been sufficiently overcome by adverse proof.

For the reason that the court erred in overruling the plaintiff's demurrer to the defendant's answer, and that the charges given by the court were likewise erroneous, we conclude that the proper determination of this appeal is to reverse the judgment, and to remand the cause for further proceedings.

REVERSED AND REMANDED.

[Opinion filed December 21, 1882.]

## SEPARATE OPINION.

BONNER, ASSOCIATE JUSTICE.— I am of the opinion that, under the facts and circumstances of this case, Nancy Thompson, in right of her putative marriage with Jonathan Routh, was entitled to one-half the property acquired during that marriage in the nature of a partnership of acquests and gains.

I am further of the opinion that only the remainder of the property of that marriage, or one-half the whole, could constitute the net community property of Jonathan Routh and his legal wife, Elizabeth Routh, plaintiff below, and that all to which the latter should in any event be entitled would be one-fourth the whole, or one-half the net community property of herself and Jonathan Routh. Clendenning v. Clendenning, 3 La. (N. S.), 438; Succession of Navarro, 24 La. Ann., 297; Harrington v. Barfield, 30 La. Ann., part 2, 1297; Gaines v. Hennen, 24 How. (U. S.), 553; Gaines v. New Orleans, 6 Wall., 642; Smith v. Smith, 1 Tex., 621; Lee v. Smith, 18 Tex., 141; Henderson v. Ryan, 27 Tex., 670.

[Opinion filed December 21, 1882.]