F. M. SATTERWHITE ET AL. V. LEANAH ROSSER ET AL.

(Case No. 1762.)

1. PARTIES.— Under our system, in which there is no distinction, as to the manner and time of their enforcement, between legal and equitable rights, the joinder by mutual consent of plaintiffs in trespass to try title, in one of whom is vested the legal title, and in the other the equitable interest, based on a contract with the owner of the legal title, though an irregularity, is not fatal to the action, and would constitute no ground for reversal.

2. LIMITATION.— When a party relies upon naked possession alone as the foundation of his right to land, it must be such an actual occupancy as the law recognizes as sufficient if persisted in for a long enough period of time, to cut off the true owner's right of recovery; such possession must not only be visible, but continuous, notorious, adverse, and of such a character as to indicate the assertion of a claim of exclusive ownership in the occupant.

3. SAME.— Such possession must be continuously and persistently adverse; its character cannot be changed or abandoned, and afterwards renewed at pleasure. So that though the possession be continuous, if it is held for a

portion of the time in recognized subordination to the true owner, and for another time in repudiation of his claim to the land, the two periods of time cannot be united to constitute the period of limitation.

4. SAME — LIMITATION.— While the occupant of land declares his holding to be in subordination to the better title, his possession will be regarded as held by consent, and no continued possession thereafter will avail to mature a title under the statute of limitations until such occupant has changed the character of his possession, either by express declaration or by the exercise of acts of ownership inconsistent with a subordinate character.

5. STALE DEMAND — LACHES.— The doctrine of stale demand and laches does not apply to a strictly legal title.

6. TRANSFER OF LAND CERTIFICATE — ESTOPPEL.— When the transfer of a land certificate is made in terms amply sufficient to convey to the purchaser all present and future right of the original grantee, then the patent, when issued in the name of the grantee, inures to the benefit of the assignee, and he acquires the legal title to the land by estoppel. To this rule there may be an exception when rights are asserted by a subsequent purchaser of the certificate from the original grantee without notice.

APPEAL from Houston. Tried below before the Hon. John R. Kennard.

The fact, stated in the opinion, that the charges given, and those refused, to which exceptions were taken, cover about thirty pages of the record, precludes their insertion, nor, in view of the opinion, which announces principles by which their correctness was to be tested, is it deemed necessary. The original pleadings seem to have been lost, and there is nothing in the record to determine when the original petition was filed. The first pleading found in it is the plaintiffs' first supplemental petition, filed September 20, 1882, by F. H. Bayne and other parties, who sued as the heirs of Leanah Rosser, deceased. They sued as joint owners of the land in controversy, and explained that their joint ownership was alleged on the following facts:

That Leanah Rosser was the owner in fee simple and entitled to the possession of land; that as such, she entered into a contract with Earle Adams, Esq., whereby she employed him as her attorney to sue for and establish her title, and in writing agreed to give to him an undivided half interest in the land for his services; that she in writing empowered him to sell and convey the whole of her interest; that Adams afterwards, in 1879, made an agreement with the co-plaintiff, Bayne, whereby he agreed to sell him his (Adams') interest, and that he made Bayne a deed whereby he transferred to him such interest, and also agreed to sell and convey to Bayne Mrs. Rosser's remaining half interest, but that no writing was drawn to consummate that agreement, and that with such a state of the title, the suit was brought by the parties as co-plaintiffs.

The statement of facts consists of the testimony of many witnesses, covering nearly a hundred pages, whose evidence was mainly pointed to the question of possession and limitation claimed by appellants. The principles announced in the opinion will be understood without attempting to give even in condensed form that testimony. Verdict and judgment for appellees.

No briefs on file for appellant.

A brief is on file for appellee, but is not signed.

WEST, ASSOCIATE JUSTICE.— Under the facts adduced in evidence, the district court did not commit any serious error in refusing to give the instruction asked by the appellants in reference to the title or interest disclosed in F. H. Bayne, one of the appellees, or in relation to the running of the statute of limitations as against him.

The facts disclosed, and the jury so found by their verdict, that Bayne had, as a matter of fact, a joint interest in the land sued for with Mrs. Rosser, before the suit was filed.

In our practice there is no distinction whatever made between legal and equitable rights as to the time and manner of their enforcement. In this case, though the legal title to the land in suit may have been in Mrs. Rosser, yet if Bayne had acquired, before the suit was brought, an equitable interest in the land, based upon a contract made by her with him, either in person or by an authorized agent, it would be competent, at least not improper, to join him with her in a suit for the recovery of the land. Certainly, when, as in this case, she consented to his joining her in the suit, and the evidence discloses that in fact he did have a present interest in the land before the suit was brought, the court did not err in refusing the charge asked on this subject. Though the joinder of Bayne as one of the parties plaintiff in the suit, under the circumstances disclosed by the evidence, as has been said, was not strictly and in every respect regular, and he could not be considered under the state of the facts as a necessary party to the suit, still he had such an interest in the subject-matter of the controversy that his joinder might be tolerated, if his co-plaintiff gave her consent to it.

At all events, it appears that the most that can be said is, that, though his joinder was an irregularity, it was not fatal to the cause of action, and it does not appear that any rights of appellants were in the least prejudiced by it, and the action of the district court in the matter does not, under the circumstances, call for a reversal of

the judgment on that account. Sayles' Practice (2d ed.), sec. 169, p. 180, and also citing, to the same effect, Story's Eq. Pl., 76, 77; St. Louis R. R. Co. v. Narramore, Texas Law Rep. (vol. 2), p. 517.

Nor do we think that the district court erred in giving the instructions to the jury, to be found in the main charge of the court, on the subject of adverse possession, in connection with the plea of the statute of limitations of ten years. Nor was there any error, at least under the special facts of the case under consideration, in refusing the instruction on this subject asked by the appellants.

For the purpose of showing more fully that the action of the district court in this respect was not error, it may be proper to look somewhat into the charges given by the court of its own motion. Also, it may be well enough to consider in this connection, to some extent, the instructions asked by the appellants and refused by the court.

The charge of the court was very lengthy, covering as many as twenty closely written pages of the record. In addition to this lengthy exposition of the law applicable to the case given by the court, the appellants asked voluminous instructions extending over ten pages of the record. At the same time the intervenors, who have not appealed, also demanded five more pages of instructions as to their rights, to be given to the jury.

Taking into consideration the case as set forth in the pleadings of all the parties, and the state of facts finally disclosed by the evidence actually to exist, the charge of the court was, taken as a whole, a reasonably fair one, and in the main a correct enough exposition of the law of limitation, as applicable to the case in hand. It at least furnished the jury with sufficiently correct information as to the law governing the case on this point to enable them to pass intelligently upon the facts before them.

In the third, fourth, fifth, sixth and seventh assignments of error, it is insisted that, in several respects, the charge of the court on the question of adverse possession, even if correct in the abstract, was not applicable to the state of the case disclosed by the evidence.

The portions of the main charge of the court brought under review by these assignments of error relate to the intent with which the original entry was made, and the circumstances and manner in which the actual occupancy commenced, and also instructs the jury as to the law applicable to a case where the original entry was under the true owner, and the occupant afterwards changes or attempts to change this character of possession into an adverse holding.

We cannot agree with the appellants in their view as to these claims. There was some evidence, more or less, as to all the issues presented by the court in those portions of the charge that are here complained of.

One of the main grounds of complaint is, that, although there was no evidence on the point, yet the court, in more than one paragraph of its charge, presented for the consideration of the jury the law applicable in the event that the party entering went into possession originally for some other purpose than to claim the land against the true owner, and after so entering, for the first time conceived the design of holding the land for himself, and in hostility to the claim under which he entered. As, for instance, where a party enters as a tenant, and afterwards concludes to hold for himself; and many other like cases, that can be easily imagined, might arise.

There appears to us to have been a considerable amount of evidence adduced on the trial that bears on this aspect of the case as presented by the judge in his charge. In fact, it was quite a material and disputed point in the case, and, in reference to it, a good deal of evidence was adduced *pro* and *con*.

There is certainly considerable proof going to show that the appellants and those through whom they claim held the land recognizing the superior rights of Mrs. Rosser, or, rather, of her husband to it.

There is evidence that at least one of the appellants expressed more than once a desire to purchase the Rosser title. There was also the evidence of Craddock, C. W. Hallmark, H. Bayne and others, from which the conclusion might be fairly drawn that the appellants were not all the time holding the land in hostility to the Rosser title. There are, besides the evidence of these witnesses, many other facts and circumstances disclosed in the case from which the jury might well draw the same conclusion. The relationship and close family connection between Mrs. Rosser and some of the appellants; the fact that the appellant, F. M. Satterwhite, had married the daughter of J. B. Hallmark, who was a brother of Mrs. Rosser, and who had, in company with his brother, G. W. Hallmark, carried the chain when the land in suit was first surveyed for his sister's husband, might also be considered, as well as many more like facts to be found in the record.

When the case was tried, resort was necessarily had to circumstantial evidence to a considerable extent, as nearly all the witnesses who were likely to be the most fully informed as to the facts

and circumstances under which appellants had originally taken possession of the land were dead. G. W. Hallmark, Rosser's brother-in-law and agent, and his two brothers, at the time of the trial, were all dead. Mrs. Hallmark, the widow of G. W. Hallmark, seventy-two years old, before the time of trial, gave some evidence on the subject that tended strongly to corroborate the evidence of Craddock, Bayne and others as to the character of the first actual occupancy of the land by John and Jeff Satterwhite.

Although much of her evidence was rightly excluded, upon the objection of appellees raised as to its admissibility, yet she did testify without objection, and her evidence is found in the statement of facts, that she knew the original entry on the land of John Satterwhite was by the permission, or at least with the knowledge and consent, of her husband, who was Rosser's agent at the time, and that, at the time of his original entry, he (John Satterwhite) acknowledged Rosser's title to the land, and promised to buy it from him on Rosser's return.

Taking all the evidence together, though it is quite conflicting, and on some points the different statements of the witnesses are almost if not wholly irreconcilable, we believe the jury had the right to conclude, as they did, that the original entry of the Satterwhites, in 1857 and 1858, was under and in subordination to the Rosser title.

Furthermore we believe, with the jury, that the evidence did not disclose that continuous, persistent assertion of right or claim, in hostility to the true owner, that is necessary to enable a party to obtain the benefit of this plea of limitations.

It is well settled, that, where a party relies upon naked possession alone as the foundation for his adverse claim, it must be such an actual occupancy as the law recognizes as sufficient, if persisted in for a long enough period of time, to cut off the true owner's right of recovery.

It has been said that such possession must not only be actual, but also visible, continuous, notorious, distinct, hostile (i. e., adverse), and of such a character as to indicate unmistakably an assertion of a claim of exclusive ownership in the occupant. Sparrow v. Hovey, 44 Mich., 63; Soule v. Barlow, 49 Vt., 329; 2 Smith's Leading Cases, 561 et seq.; Word v. Drouthett, 44 Tex., 373.

The possession must be continuously and consistently adverse to the true owner. The character of possession cannot be changed or abandoned, and then renewed afterwards at the will and pleasure of the occupant. It will not do, as the jury found was done in this case,

for the parties to claim for a considerable period of time to hold in subordination of the true title. Again, after this, for a while to repudiate it. Then again to acknowledge the right of the owner, all the time still occupying the land. This character of possession will not suffice under the terms of the statute. The possession must, for all the time fixed by law, be continuously and consistently adverse. Such a party will not be allowed to blow hot and to blow cold, for such conduct is calculated to trick and deceive the true owner and lull him to sleep. Such character of possession as above described is wanting in that element of continued and uninterrupted hostility which it is essential should be notoriously and continuously exhibited by the occupant in order to enable the party invoking the aid of the statute to avail himself of its benefits.

This character of adverse possession has been considered recently by this court in the case of Chance v. Branch, 58 Tex., 492. In that case, as in this, there was evidence going to show that the original entry was not certainly in hostility to the title of the true owner. The court there, after citing authorities from our own court on the point, quote with approval the rule on the subject laid down by Mr. Angell. That rule he expresses in the following words: " So long as the possessor declares that he holds in subordination to the better title, the possession will be regarded as held by consent; nor will a continued possession after such declarations avail to mature a title under the statute of limitations, until the party has changed the character of his possession either by express declarations or by the exercise of acts of ownership inconsistent with a subordinate character." Angell on Limitation, sec. 354.

Neither did the district court err in refusing the charge asked by the appellant, as to the supposed laches of the appellees and the intervenors, and the staleness of their demand. The charge in the form asked, that is, as applied to both the appellees and the intervenors, was certainly erroneous. The doctrine of stale demand and laches does not apply to a strictly legal title. Here, the apparent legal title was certainly not in any of appellants, nor were they in any manner connected with it, but were avowedly holding in open hostility to it. Williams v. Conger, 49 Tex., 602; Murphy v. Welder, 58 Tex., 241.

Further, if the appellees did not have the legal title themselves, then it certainly was in the intervenors, who were then before the court, asserting their rights under it; so that in no aspect of the case was the instruction as asked proper to be given.

The legal title, however, in this case, is believed not to have been,

as a matter of law, in the intervenors. The original transfer was burned, but there is a copy of it in the record. Its terms are full and amply sufficient to convey all present and future rights of the original grantee. It is in fact a transfer with warranty of title. In this class of cases the patent, when issued, if in the name of the original grantee, inures to the benefit of the assignee. He acquires the legal title by estoppel.

This, we believe, is the true doctrine, unless by some means, as by a subsequent sale by the original grantee of the certificate to a stranger, who has no notice of the first sale or some like case, some right or equity in favor of some third party may possibly grow up. There is, however, nothing of the kind shown or attempted to be shown here. Johnson v. Newman, 43 Tex., 642. See, also, in this connection: Mays v. Lewis, 4 Tex., 38; Wheat v. Owens, 15 Tex., 241; also Lindsay v. Jaffray, 55 Tex., 626; Walters v. Jewett, 28 Tex., 200, and Box v. Lawrence, 14 Tex., 545; Burkett & Murphy v. Scarborough, 59 Tex., 498.

As to the last error assigned, bringing in question the action of the court and the jury in refusing, under the facts of this case, to allow the appellants pay for their improvements, we do not deem it necessary to consider it at any length. The charge of the court on that subject was quite as favorable to the appellants as the law would permit it to be. The finding of the jury on the subject was also justified by the evidence.

There is no serious error found in the record, and the judgment is affirmed.

AFFIRMED.

[Opinion delivered February 19, 1884.]