MEREDITH v. MITCHELL. (No. 7156.)

(Court of Civil Appeals of Texas. Dallas. May 9, 1914. Rehearing Denied May 30, 1914.)

ADVERSE POSSESSION (§ 13*)—ACTS CONSTITUTING.

Where plaintiff and those under whom he claimed resided about four miles from the tract in controversy, and the tract was never occupied by them or by a tenant and was not fenced or improved, and the only visible claim of right of ownership was the cutting of timber and converting it into lumber and for firewood, and the cutting of timber was not continuous for ten years, there was no such adverse possession as ripened into title, though plaintiff showed payment of taxes for over ten years and until the holder of the legal title set up his claim.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 65, 67–76; Dec. Dig. § 13.*]

Appeal from District Court, Van Zandt County; R. W. Simpson, Judge.

Action by G. C. Meredith against T. J. Mitchell. From a judgment for defendant, plaintiff appeals. Affirmed.

L. Davidson, of Canton, and J. N. Starr, of Athens, for appellant. T. R. Yantis, of Canton, and Wynne, Wynne & Gilmore, of Wills Point, for appellee.

RAINEY, C. J. This is an action of trespass to try title to a tract of land in Van Zandt county, Tex., and the only issue presented is whether or not appellant is entitled to recover on the ground of ten years' limitation.

It is admitted that appellee holds the land by virtue of superior legal title, and entitled to recover unless appellant has held said land by adverse possession under a claim of right for a period of ten years.

The character of appellant's possession of the land is shown by the following testimony:

"Jim Meredith, witness for plaintiff, G. C. Meredith, testified that his grandfather and father owned a sawmill located about four miles from the tract of land in controversy, and bought the land for its timber to saw into lumber and for building and fencing timber for their home place. That they cut timber from the land all the time so long as they run the sawmill, which was eight or ten years, and sawed same into lumber, and my father has cut timber from the land every year, since the sawmill quit running, to keep up his farm and residence until Mitchell got on the land. That he tried to fence Mitchell out, but that Mitchell run him off with a double-barrel shotgun. Mitchell told him that he had to get off. I said to him I did not think I had to get off, but I reckon I can get off. That everybody living in the settlement where the land lay knew the land as the Meredith land. That he had always known the land as his grandfather's and father's land, and never heard of any one else

claiming the land until Mitchell got on the land. That he cut timber one year, after the same mill quit running, from the land to fence 100 acres of land. That he got the timber from his grandfather and split it to rails one-half for the other."

J. C. Meredith, witness for plaintiff, G. C. Meredith, testified that:

. "The land was bought by my grandfather and father the same year I was born, but before I was born; that his father and grandfather had owned the land ever since he could remember; that they have been cutting and using the timber from the land all the time; every year since he could remember; that he helped cut timber from the land as soon as he was large enough to help his father and grandfather; that he had always known the land as his father's and grandfather's land, and never knew of any one else claiming the land; that the land was generally known in the country where the land lay as the Meredith land; that the claim of ownership of his father and grandfather was open and notorious, and so were all their acts of possession and use of the land."

Jeff Davis, a witness for plaintiff, G. C. Meredith, testified that:

"He had been in Texas 25 years. That he settled not a great distance from the land in controversy, and soon after he came to Texas he learned that this land belonged to E. Meredith and G. C. Meredith. That they hauled saw stock from the land right by his house. That he had seen them hauling saw stock from the land every year for a number of years, and that this was constant and continued for many years. That he bought some timber from the land from G. C. Meredith about 15 years ago. That the Merediths and their claim of ownership was open and notorious, and that he never heard of any one else claiming the land until Mitchell got on it. That it was timber land. That, when he first came to this country, lands upon the hills were worth some $3 per acre, but the land in controversy was not worth so much; it being low wet land in the back woods and not so desirable."

G. C. Meredith, plaintiff, testified in his own behalf that:

"My father and Mr. Morris bought the land from the old man Morris. That the young Mr. Morris wanted out of it and I bought him out. That the land was desirable only for its timber, and that they bought it for its timber. That there was no timber on their home place suitable for building and fencing purposes, and that they bought the land for its timber to supply their sawmill in saw stock, and for building and fencing purposes on their home place. That he knew it was a tax title, but believed it a good title and believed it was his land. That he and his father owned a sawmill located about four miles from the land, and that they cut and hauled the timber from the land to their sawmill for eight or ten years and sawed same into lumber, until they cut about all the timber from the land suitable for saw stock, and after they quit running the sawmill he continued to cut and use the timber from the land every year and all the time for building and fencing purposes for his home place until Mitchell set up his claim and got on the land. That he kept others off the land, and that he had an occasion one time to move some parties off who were attempting to cut timber from the land. He told them that they were on his land and they moved off. That he sold some timber to other parties and kept others off only as they bought from him. That his claim was open and notorious, and that he never heard of any one else claiming the land until Mitchell set up his claim. That the land was generally known in

the country where the land lay as his land. That the land lay in a low level section of country near the swamps of Kickapoo creek. That there was no farms nor residences in that immediate section, and that he would not live on the land for it.",

Tax receipts were in possession of plaintiff, G. C. Meredith, and exhibited on the trial of the case showing payment of the taxes on the land every year since 1883, until the year 1911, when Mitchell set up his claim.

It is shown that appellant and those under whom he claims resided about four miles from the land; that it was never occupied by appellant nor by a tenant. It was never fenced, nor are there any improvements of any character whatever placed thereon. The only visible claim of right of ownership was the cutting of timber and hauling it off for converting it into lumber and for firewood. It seems that this cutting of timber to be converted into lumber was not continuous for the period of ten years.

The evidence, we think, fails to show such adverse possession as contemplated by the statute for title to have ripened in appellant by the statute of ten years limitation. Brackin v. Jones, 63 Tex. 184; Satterwhite v. Rosser, 61 Tex. 166; Sellman v. Hardin, 58 Tex. 86.

In Brackin v. Jones, supra, it is said:

"It is a general rule that, where a person relies upon naked possession as a foundation for an adverse claim to land, there must be an actual occupancy, and beyond this the possession cannot be extended."

In Sellman v. Hardin, 58 Tex. 86, where the facts of possession are very similar to those in this case, but stronger to show an appropriation of the land, Justice Stayton held:

"The evidence * * * was not sufficient to show such adverse possession as would sustain his plea of limitation."

The judgment is affirmed.