**Ann BEARD, Appellant,**

v.

**Charlotte Washington McLAREN, et al., Appellees.**

**No. 3–89–179–CV.**

Court of Appeals of Texas, Austin.

Sept. 19, 1990.

Rehearing Overruled Dec. 12, 1990.

Herbert Crook, Law Offices of Herbert Crook, Austin, for appellant.

Cynthia T. Sheppard, Houston, Marek & Griffin, Victoria, for appellees.

Before SHANNON, C.J., and CARROLL and ABOUSSIE, JJ.

SHANNON, Chief Justice.

This appeal involves title to 22.25 acres in eastern Travis County. Appellant and others [1] held record title to the acreage. Upon a jury finding of adverse possession, the district court of Travis County rendered judgment vesting title in appellees. This Court will reverse the judgment.

On September 21, 1937, Stark Washington died testate. He devised a one-fourth part of his estate to each of his four children, two of whom were Col. William Claude Washington and Walter H. Washington. Appellant, her brother, and her sister are the children of Col. Washington; appellees are the children and the surviving widow of Walter Washington.

Part of the Stark Washington estate consisted of six hundred-three acres located in Travis and Bastrop Counties. From their father's death until 1945, the Washington children held the tract as cotenants. In 1945, however, the children determined to partition the land. By partition deed, Col. Washington was conveyed "Tract A" and Walter Washington "Tract B." These tracts are contiguous and were described by metes and bounds descriptions in the partition deed.

At the time of the partition, a part of the boundary dividing Tract A from Tract B was fenced and a part was unfenced. An old fence cut across the southern end of Tract A separating 22.25 acres from the balance of Tract A. The effect was to create an enclosure which encompassed 22.25 acres of Tract A and all of Tract B. The following drawing illustrates the position of the 22.25–acre tract in controversy.

1. Appellant Ann Beard, her sister Jane Smith, and her brother Robert Washington were defendants in the suit in district court. The appeal bond, however, was signed solely by Ann Beard.

In 1947, Walter Washington built a house on Tract B and moved there with his family. He carried on a farming and ranching operation on Tract B and the 22.25 acre plot until the time of his death in 1967. Walter grazed cattle on the 22.25 acres and his son planted several peach trees and grape vines there. There were two or more dilapidated structures on the 22.25 acres. In later years, Walter Washington's son sheltered some old equipment or machinery in one of the buildings. The family picked up pecans from trees growing on the acreage. Walter's children

played on the acreage and in later years hunted there with their friends. Walter or his family repaired the old fence line bounding the west side of the 22.25–acre tract when needed. Walter's family always regarded the 22.25 acres as part of their father's land.

After Col. Washington retired from the United States Army, he and his family moved to Austin in 1945. Col. Washington never lived on Tract A, but he carried on a farming and ranching operation there either personally or through tenants or lessees. Col. Washington raised cattle and grew hay crops to feed the cattle. From time to time Col. Washington or his lessees stored hay in one or more of the structures on the 22.25–acre tract.

Over appellant's objection, the district court submitted appellees' adverse possession cause in the following manner:

QUESTION NO. 1.

Did the Walter Washington, Sr. family maintain exclusive, peaceable and adverse possession of the land in question, cultivating, using or enjoying the same continuously for any period of ten (10) consecutive years prior to August 25, 1987?

You are instructed as follows:

"EXCLUSIVE POSSESSION" means an exclusive dominion over the land and an appropriation of it to the claimant's use and benefit.

"PEACEABLE POSSESSION" is possession which is continuous and not interrupted by adverse suit to recover the estate.

"ADVERSE POSSESSION" means actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person.

A "CLAIM OF RIGHT" means with the intent to claim the land as their own and to hold it for themselves to the exclusion of others.

Answer "Yes" or "No."

ANSWER: Yes

Appellant requested the following instructions, among others:

(1) You are instructed that before you may find that [appellees] were in adverse possession of the disputed property you must find from a preponderance of evidence that either Walter Washington or [his wife] repudiated the title that they granted to [Col. Washington] in the partition deed.

(2) You are instructed that before you may find that [appellees] were in adverse possession of the disputed property you must find from a preponderance of evidence that either Walter Washington or [his wife] gave actual notice of that repudiation, if any, to [Col. Washington] or to [appellant, her brother or her sister], or that after such repudiation, if any, her possession was of such unequivocal notoriety that [Col. Washington] or [appellant or her brother or her sister] would be presumed to have had notice thereof.

Appellant also objected to the submission of question one because it failed to recognize the principle that before appellees could be in adverse possession of the 22.25–acre tract they must have repudiated the title granted to Col. Washington by the partition deed and must have given notice of such repudiation. The district court refused to submit appellant's requested instructions and also overruled appellant's objections to question one.

■ On appeal, appellant complains only of the district court's refusal to submit her repudiation theory.[2] Although appellant is before this Court on a partial statement of facts, she properly designated and filed a statement of the complaints which she intended to advance. Accordingly, appellant is entitled to the presumption that nothing omitted from the record is relevant to the

---

**2.** Appellees do not suggest that the tendered instructions were not couched in substantially correct wording. Because appellant tendered instructions and also objected to question one, it

is unnecessary to determine whether instruction or objection was the proper method to complain of the charge.

disposition of her appeal. Tex.R.App.P. Ann. 53(d) (Pamp.1990); *Producer's Const. Co. v. Muegge,* 669 S.W.2d 717, 718 (Tex. 1984).

■ In *Rhodes v. Cahill,* 33 Tex.Sup. Ct.J. 648, 649–50 (July 3, 1990), the Supreme Court discussed "adverse possession" in the more usual context of a stranger in possession of property claiming it as his own:

> Adverse possession is statutorily defined as "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." Tex.Civ.Prac. & Rem.Code Ann. § 16.021 (Vernon 1986). More than a century ago, we outlined the various elements to be proved by a claimant seeking prescriptive title through adverse possession in *Satterwhite v. Rosser,* 61 Tex. 166 (1884):
>
> > It is well settled, that, where a party relies upon naked possession alone as the foundation for his adverse claim, it must be such an actual occupancy as the law recognizes as sufficient, if persisted in for a long enough period of time, to cut off the true owner's right of recovery.
> >
> > It has been said that such possession must not only be actual, but also visible, continuous, notorious, distinct, hostile (i.e., adverse), and of such a character as to indicate unmistakably an assertion of a claim of exclusive ownership in the occupant.

■ On the other hand, after a partition, one party's continued possession of a tract awarded to another is presumed to be permissive, similar to that of a grantor who remains in possession, and repudiation and notice are required before limitations begin to run. *Sweeten v. Park,* 154 Tex. 266, 276 S.W.2d 794, 797 (1955); *Runnels v. Whitfield,* 593 S.W.2d 388, 390 (Tex.App.1979, no writ); *Texas Co. v. Argo Oil Corp.,* 277 S.W.2d 308, 309 (Tex.Civ.App.1955, writ ref'd n.r.e.). Likewise, one cotenant claiming adverse possession as to other cotenants must repudiate title in such a manner as to bring such repudiation to the notice of the other cotenants. *Todd v. Bruner,* 365 S.W.2d 155 (Tex.1963). In this connection, Justice Norvell wrote:

> Insofar as the true owner of property is concerned, there is a vast difference between the notice of adverse claim conveyed by the presence of a stranger in possession and that of a cotenant in possession. It is not unusual for one cotenant to have exclusive possession and make beneficial use of lands for rather long periods of time and ordinarily such use is with the acquiescence of the other cotenants. Cotenancy is a common form of land tenure when owners belong to the same family. This results largely by the operation of the statute of descent and distribution and commonly followed customs and practices relating to the making of devises of lands. The legal presumption follows a generally recognized habit or practice based upon years of observed experience. The statutes of limitation are statutes of repose. They are intended to settle and support land titles and are not designed to afford a method whereby one member of a family may appropriate property belonging to his kinsman. Hence the legal requirement that notice of repudiation of the common title should be clear, unequivocal and unmistakable....

*Id.* at 159–60.

Similar considerations lead this Court to the conclusion that appellees were required to show repudiation and notice before limitations commenced. Walter Washington was not a stranger claiming possession to the 22.25–acre plot. Instead, he, in the most solemn manner, conveyed that acreage to his brother, Col. Washington. His deed to Col. Washington estopped him, as grantor, from claiming that his possession of the 22.25 acres was adverse. *Kidd v. Young,* 144 Tex. 322, 190 S.W.2d 65, 66 (1945). Under the circumstances, Walter's possession of the tract must be regarded as subservient to the title held by Col. Washington, until such time as he repudiated Col. Washington's title and brought such repudiation to the Colonel's notice.

*Haynes v. Dunn,* 518 S.W.2d 880, 885–86 (Tex.Civ.App.1975, writ ref'd n.r.e.).

The district court's submission is probably adequate in the usual situation where a stranger in possession of property raises a claim adverse to the record title owner. Under the facts of this case, however, the district court was required to instruct the jury regarding repudiation and notice. Because the district court's submission did not include the elements of repudiation and notice, it was erroneous; it is plain that this error amounted to such a denial of the rights of appellant as was calculated to cause and probably did cause the rendition of an improper judgment in the cause. Tex.R.App.P.Ann. 184(b) (Pamp.1990).

The judgment is reversed and the cause is remanded for new trial.