### VERSYP v. VERSYP.

(Court of Civil Appeals of Texas. Ft. Worth. May 17, 1913. Rehearing Denied June 14, 1913.)

1. HUSBAND AND WIFE (§ 281*)—VALIDITY—FRAUD—UNDERSTANDING CONTRACT—EQUITABLENESS.

Plaintiff and defendant being husband and wife, and having separated, defendant, by contract, gave plaintiff certain land, after her death to go to their children. Defendant set up fraud in procuring the contract. The jury specially found that there was no fraud, but that the contract was not just and equitable and that the parties did not understand its effect. *Held* error to enter judgment for defendant canceling the contract on such findings; since it was immaterial that the parties did not understand the precise meaning of all the terms of the contract, and the jury could not substitute their judgment of the equitableness of the contract for that of the parties themselves.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 1061; Dec. Dig. § 281.*]

2. TRIAL (§ 251*)—INSTRUCTIONS—ISSUES.

In an action to enjoin a trespass, where defendant alleged fraud in procuring a contract whereby land was transferred to plaintiff, his wife, from whom he had separated, and asked for its cancellation instructions that a lien on the land reserved in the contract in favor of defendant's children by a former wife and plaintiff's promise to pay same were inoperative, and that, though by the contract plaintiff was given the custody of their children, de-

fendant would still be liable for their support, were foreign to the issues in the case.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 587–595; Dec. Dig. § 251.*]

**3. HUSBAND AND WIFE (§ 279*)—SEPARATION CONTRACT—VALIDITY.**

Where a husband and wife have already separated, a conveyance intended as a provision for the wife's support will be upheld though the property conveyed was the separate property of the husband.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1054, 1056–1060; Dec. Dig. § 279.*]

**4. DEEDS (§ 211*)—VALIDITY—EQUITABLENESS —EVIDENCE.**

Evidence *held* not to show that a contract conveying land was so unjust and inequitable as to warrant setting it aside.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 637–647; Dec. Dig. § 211.*]

Appeal from District Court, Taylor County; Thos. L. Blanton, Judge.

Action by Clara F. Versyp against James Versyp. From a judgment for defendant, plaintiff appeals. Reversed, and judgment rendered for appellant.

Scarborough & Hickman, of Abilene, for appellant. D. G. Hill, of Abilene, for appellee.

CONNER, C. J. Appellant instituted this suit on January 26, 1911, to enjoin her husband, James Versyp, from trespassing upon and interfering with her control of the 200-acre tract of land occupied by her as a homestead and claimed in her separate right by virtue of a separation contract executed by the respective parties on the 12th day of February, 1910. A temporary writ of injunction was issued; but upon a trial of the merits in the district court the injunction was vacated, on the ground that the contract had been executed by the mutual mistake of the parties in supposing that the lands disposed of by the contract were ·community property instead of the separate property of James Versyp. On appeal, however, the judgment was reversed by the Court of Civil Appeals for the Eighth Supreme Judicial District for the reason that there was neither pleading nor evidence authorizing an annulment of the contract on the ground of mutual mistake. See Versyp v. Versyp, 146 S. W. 705. On the last trial in the district court, the one now· under consideration, it seems that the defense of mutual mistake if ever asserted was abandoned; defendant's special plea in substance being that the land was wholly acquired by his separate means, that he had been induced to execute the contract by fraudulent representations, that it was the community property of himself and the plaintiff, and that the contract as made was unjust and inequitable.

In, answer to special issues submitted by the court to the jury, it found, among other things that are omitted as immaterial, that at the time of the execution of the contract in question the parties were "permanently separated," and that James Versyp was not "induced to execute" it "by reason of any false or fraudulent representations made to him by the plaintiff or her attorney." The jury also found that the provisions of the contract were not "just and equitable." The court upon all findings entered a judgment in defendant's favor, canceling the contract and dissolving the injunction.

It is undisputed that the plaintiff and the defendant were duly married in 1889, and lived together as husband and wife until in January, 1910, when the parties permanently separated and have not lived together since; that of this marriage four children were born, three boys and one girl, the boys at the date of the contract being aged 18, 13, and 9 years, respectively, and the girl then being 13 years of age; that at the date of the contract the parties owned certain cattle, horses, and farming implements that belonged to them in community, and James Versyp owned in his own separate right 320 acres of land, upon which the parties lived and farmed. On the date already stated, to wit, February 12, 1910, James Versyp and Clara F. Versyp entered into and duly executed a contract in writing whereby the personal property was divided as therein stated and as to which there seems to be no controversy in this suit, and the 320 acres mentioned were disposed of upon the terms and in the proportions following: That is to say, Mrs. Versyp was to have 200 acres situated south of the Texas & Pacific Railway right of way, now occupied by her, and James Versyp was to retain the 110 acres lying north of such right of way. Mrs. Versyp assumed to pay, upon terms and at times stated, $2,600 to two adult children of James Versyp by a former marriage, due them it seems as their interest in their deceased mother's estate which had been purchased by James Versyp, and agreed not to sell the land but to retain the entire estate therein until her death, when it should pass to her children. The contract recited that "said sums of money due the above parties (James Versyp's former children) are liens upon the above-described property (all the real estate mentioned) to secure the payment of the same." It was further agreed that Mrs. Versyp was to remain in the custody and control of the children of the marriage, and that James Versyp was not in any way to interfere with the custody of the same. It further appears that after the execution of the deed the parties acted in accordance with its terms for some time; but that, after James Versyp had returned from a visit to the foreign country of his birth, he, during the plaintiff's absence, entered into one room of her home and against her will has continued to reside there since from time to time, as

the plaintiff testified, interfering with her control and the proper management of her farm. The plaintiff further testified that none of the debt that she had assumed to pay in the contract had been paid, but that the payment as it matured according to the terms of the contract had been prevented by the defendant's interference. No complaint, however, on the part of James Versyp's earlier children appears to have been made, so far as shown in the present record.

[1] With the foregoing statement we shall undertake to briefly dispose of appellant's assignments of error. Appellant insists under her first assignment that, the jury having found that at the date of the contract in question the parties were permanently separated, and that the defendant had not been induced to enter into it by any fraud or misrepresentation, the court should have entered a judgment for her, and we think this contention must be sustained. We infer that the court entered the judgment he did on the ground that the jury in addition to the findings that the provisions of the contract were unjust and inequitable, further found that the parties did not "understand the terms of said contract and the legal effect in relation to the property rights."

[2] These findings may have been in a measure influenced by the court's charges, to which error is assigned, to the effect that the lien given in the contract to secure the payment of the $2,600 to James Versyp's former children was inoperative as against the 200 acres awarded to the plaintiff, as was also Mrs. Versyp's agreement to pay said $2,600 in event she was possessed of no other property; James Versyp in that event, as instructed, being liable. The court also charged that regardless of their custody James Versyp was liable for any debts contracted in behalf of the education and maintenance of the children during their minority. But, whatever the influence of these charges, we regard the questions therein presented, as also the special findings supposed to have influenced the judgment, as wholly foreign to the controlling issues in the case. It will be enough to determine the rights and remedies of other parties when they are presented for determination. It is clear from the undisputed evidence and the jury's findings that both parties had the capacity to contract, that each entered into it willingly after advice of counsel and discussion of its terms, and that no fraud or misrepresentation induced its execution. It is immaterial under such circumstances that the parties may not have understood the precise meaning of all of its terms nor the exact limits of its legal effect. Nor under such circumstances can the judgment of the jury as to whether the provisions of the contract were equitable or inequitable be substituted for that of the parties to the contract. It is sufficient that the parties were competent to contract and did so without fraud or imposition.

[3] As held on the former appeal and by the weight of authority in the American courts, where spouses have already separated, a conveyance intended as a provision for the support of the wife will be upheld. Rains v. Wheeler, 76 Tex. 395; 13 S. W. 324; Speer on Law of Married Women, § 91; Moore v. Moore, 28 Tex. Civ. App. 600, 68 S. W. 60. And in such case it cannot be material that property conveyed to the wife with such laudable end in view had theretofore been separate property of the husband.

[4] Moreover, we agree with the conclusion of the El Paso court, founded upon the same evidence, that the contract in question was fair and reasonable, certainly not so inequitable as to authorize its cancellation. At or about the time of its execution, James Versyp expressed the purpose of permanently returning to the land of his birth. He did so, though later returning to this country. The inference is strong that his purpose at the time of the execution of the contract was to relieve himself of the debt due the children of his former wife and to impose upon the plaintiff in this suit the burden of the future care and maintenance of his minor children. What more natural or just thing could he do under the circumstances than to make some provisions for the wife—the future burden bearer? The provision made was intended to convey to her but a life estate in the land with remainder over to his own children, in consideration for which the wife assumed the entire burden of maintaining their children and agreed to pay $2,600 due from James Versyp alone. It is true he was a foreigner and may not have been learned in either literature or law; but without dispute he had lived in America many years and could but have understood the use and meaning of ordinary terms, in addition to which, as stated, the evidence shows that the contract was not executed until after discussion and consultation with counsel, whose fairness has not been impugned by the verdict. In brief, we find nothing in the evidence nor in the provisions of the contract rendering it unjust or inequitable to James Versyp. On the whole, therefore, we conclude, as stated before, that under the material findings of the jury the judgment should have been for appellant.

It is accordingly ordered that the judgment below be reversed, and that it be here rendered for appellant, with execution for possession, perpetuating the injunction in accordance with her prayer.