## KEARSE v. KEARSE et al. (No. 8995.)

(Court of Civil Appeals of Texas. Dallas. April 12, 1924. Rehearing Denied May 31, 1924.)

1. **Husband and wife** &#11013;254—**Property purchased by wife entirely on credit "community property."**

Property purchased by wife entirely on credit is community property, under Rev. St. art. 4622.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Community Property.]

2. **Marriage** &#11013;1—**Dissolved only by death or judicial decree.**

Marriage can be dissolved only by death or judicial decree.

3. **Husband and wife** &#11013;256—**Property acquired by wife held community property, though conveyed to her as separate property.**

Where wife, during existence of the marriage relation, but after a separation, purchased property on credit and after property had increased in value part of it was conveyed to grantor in payment of purchase price, remaining portion was community estate, under Rev. St. art. 4622, notwithstanding that property was conveyed to her "as her separate property."

4. **Husband and wife** &#11013;256—**A deed to wife as separate estate raises only prima facie presumption, that property is to be her separate estate.**

A deed of land by third party to wife, "as her separate estate," creates presumption that property conveyed is to be separate estate, but such presumption is only prima facie and not conclusive.

5. **Husband and wife** &#11013;262(1)—**Property conveyed to wife paid for with community funds presumed community property unless husband caused deed to be made to her.**

Where consideration paid for property is shown to have been community funds, presumption is that property conveyed to wife is community property unless it further appears that husband caused deed to be made to her, in which case it would be an acquisition by gift.

**6. Insane persons ⬥⟞65—Agreement between executor and widow concerning property of non compos mentis held unenforceable.**

Where a life estate in one-half of community interest in two tracts of land was devised to a child non compos mentis, trustee and remainderman having only authority to manage and control property for the child's support and maintenance, an agreement between trustee and widow that trustee as independent executor would convey to widow one tract of land and she would in turn convey her interest in other tract to him as such executor was unenforceable, since life estate of non compos mentis could not be conveyed without judicial proceedings.

Appeal from District Court, Ellis County; W. L. Harding, Judge.

Suit by Rosetta Kearse against R. C. Kearse and others. From the judgment, plaintiff appeals, and defendants file cross-assignments. Affirmed.

G. C. Grace and J. C. Lumpkins, both of Waxahachie, for appellant.

C. M. Supple and Will P. Hancock, both of Waxahachie, for appellees.

LOONEY, J. Rosetta Kearse and Calhoun Kearse were legally married September 15, 1869, and maintained their marital relation until about September, 1898, when a permanent separation took place, Calhoun going to Walker county, Tex., where he' continued to reside until his death September 29,' 1919, and Rosetta, with four of their minor children, including Eunice, a non compos mentis, continued to reside in Ellis county, where they were residing at the time of the separation.

On June 2, 1893, J. B. Watkins conveyed to Calhoun Kearse 144 acres of land near Milford, in Ellis county, upon which the family resided and made their homestead up to the time of the separation. The consideration for the conveyance from Watkins was $2,259.80, only $200 of which was paid, the remainder being evidenced by vendor's lien notes. Calhoun Kearse was not able to pay the Watkins notes, and, at his request, Mrs. M. E. Bibbee, a widowed daughter of theirs, furnished the money on June 8, 1898, and took a transfer of the notes from Watkins.

A short time after the separation of Calhoun and Rosetta and on September 13, 1898, they conveyed the 144 acres of land to Mrs. Bibbee in settlement of the purchase-money notes transferred to her by Watkins.

After the separation and after Calhoun had removed to Walker county, as Mrs. Kearse was without a home and burdened with the care and support of four minor children, she requested her daughter, Mrs. Bibbee, to sell the land back to her. To this Mrs. Bibbee consented, and, on January 11, 1899, conveyed the land to her mother in consideration of $3,100, evidenced by 10 notes, being the amount of her investment in the Watkins notes, plus interest, which was added to the face of the notes.

Due to the fact that the land enhanced in market value, Mrs. Bibbee was willing to accept, and did, on December 20, 1900, accept from her mother a conveyance, joined in by Calhoun Kearse, of 80 acres of land, in full payment of the indebtedness that she held against her, thus leaving the 66 acres free from incumbrance.

After the land was reconveyed to Mrs. Kearse, she, as the head of the new family composed of herself and four minor children, continued to reside and make her home on the same and supported her family from its proceeds, and, after the conveyance of the 80 acres to her daughter, she continued to maintain her homestead on the remaining 66 acres.

On November 10, 1903, Mrs. Bibbee conveyed the 80-acre tract to her brother, R. C. Kearse, appellee, who, on October 12, 1904, conveyed the same to his father, Calhoun Kearse, who owned the same at the time of his death.

Calhoun Kearse died testate leaving to 'their afflicted daughter, Eunice, all his estate during her life, with remainder to his son, R. C. Kearse. His will was probated in Walker county, Tex., and, among its provisions, R. C. Kearse was appointed independent executor without bond, and was also appointed trustee to have possession, control, and management of the life estate of Eunice in the lands devised, with direction to use the proceeds for her support and maintenance.

After the death of Calhoun, and when the will was filed for probate, Mrs. Kearse thought of contesting the same, and for this purpose, made a trip to Walker county in company with two of her married daughters. While there she and her son, after considerable parley, entered into a written agreement, in substance that she should be paid $150, being one-half of the cash left by the deceased husband in a bank at Huntsville; that she, as long as physically' able, should have charge of Eunice and that the rents and revenues of the 80 acres of land should be paid to her for the support of the girl; that R. C. Kearse should pay his brother, W. J. Kearse, $650 claimed for improvements made on the 80-acre tract, and that Mrs. Kearse should also pay W. J. Kearse $150, making a total of $800 for this claim for improvements; that R. C. Kearse should have, subject to the terms of the will, the 80-acre tract; and that Mrs. Kearse should have as her separate property the 66-acre tract. The agreement used, among other, the following language:

"And the' parties hereto do here now mutually agree that as soon as practicable after the

⬥⟞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

will of the said Calhoun Kearse has been admitted to probate, and the' said R. C. Kearse has qualified as executor thereof, the said R. C. Kearse will convey unto the said Mrs. R. L. (Rosetta) Kearse all of the right, title and interest of the said estate of the said Calhoun Kearse, deceased, in and to all of the land, except the 80 acres, and in and to all of the personal property of every kind now in possession of Mrs. R. L. Kearse, and the said Mrs. R. L. Kearse, in turn, will execute a deed conveying all of her right, title, claim and interest in and to said 80 acres unto the said R. C. Kearse as executor of the will of the said Calhoun Kearse. The parties further agree that if it should become necessary to the quieting of the respective titles of the said Mrs. R. L. Kearse to the 66 acres and the said R. C. Kearse as executor of the estate of Calhoun Kearse, deceased, to the 80 acres, to have the same determined by judicial proceedings, that they will co-operate to ·the end that a partition thereof may be made by the district court of Ellis county, or of any other county upon which they may agree upon quieting, fixing and vesting the full title to the said 66 acres in and to the said Mrs. R. L. Kearse and full title to the said 80 acres in and to the said R. C. Kearse as executor of the will of Calhoun Kearse."

Mrs. Kearse was never satisfied with this agreement, and, a few days after its execution, notified R. C. Kearse that she would repudiate same, and, accordingly, refused to receive the $150 stipulated to be paid her and declined to accept any benefit under the agreement. R. C. Kearse paid W. J. Kearse $650, the amount provided in the 'agreement, but this payment was made after he had been notified by his mother that she would not be bound by the agreement.

Mrs. Kearse requested her son, R. C. Kearse, to agree to a cancellation of this agreement, and, on his refusal, filed this suit in the district court of Ellis county against R. C. Kearse and Eunice Kearse, in which she asserted title to the 66 acres as her separate property, alleging that it was the homestead of herself and children, and also claimed a one-half community interest in the 80-acre tract. She alleged the execution of the agreement referred to above, and sought to avoid the same on the ground that she was overreached by threats of suit made by R. C. Kearse, and that she was aged, inexperienced, and in ill health at the time, that untruthful statements were made to her, upon which she relied, and that altogether a fraud was perpetrated, and, further, as to the interest of the girl Eunice, the non compos mentis, that the agreement could not be carried out, wherefore she claimed that the same was unenforceable and should be set aside. ·

The court appointed guardians ad litem for Eunice, and these attorneys also filed. an answer for the other defendant. The answer of defendants contained a general denial, and specially alleged the facts leading up to and attendant upon the execution of the agreement hereinbefore referred to, and denied that the same was unenforceable. R. C. Kearse claimed that he had acted under said agreement to the extent of paying W. J. Kearse $650 for the improvement claim, that he had tendered to his mother the $150 ·and had complied with the agreement in other respects. The defendants alleged the facts in regard to the acquisition of the 66. acres of land by the plaintiff, and contended that the same was community property as· well as the 80-acre tract owned by the deceased. Defendants prayed that, if the court should set aside the agreement, it should ad-judge both these tracts of land to be community property of Calhoun and Rosetta, and that the same should be partitioned. Defendant R. C. Kearse also prayed that he should recover the $650 paid to W. J. Kearse with legal interest, and that the same should be established as a claim against the interest of the plaintiff in the lands.

The case was tried by a jury and was submitted on only one issue, as follows:

"Gentlemen of the jury: In order that the court may render a judgment in this case, you. will please say by your verdict whether the separation of Mrs. Rosetta Kearse from her husband, Calhoun Kearse, was justifiable—that is,. whether his conduct towards her was such as to justify her in leaving him as the evidence shows she did. Your answer to this may be 'yes' or 'no,' in accordance with what you may find to be the fact."

To this the jury answered, "No."

Both parties acquiesced in this submission of the case, as neither excepted or made request for the. submission of additional issues.

The court rendered judgment holding that the lands in controversy belonged to the community of Calhoun and Rosetta Kearse, and ordered same partitioned, one half in value to the plaintiff and the other half to the defendants, with a special provision that the· homestead right of Mrs. Kearse in the 66· acres should be respected.· It was further adjudged by the court that Eunice Kearse,. for life, and R. C. Kearse in fee-simple remainder, owned and were entitled to the interests of .Calhoun Kearse in the lands, subject to the homestead right of Mrs. Rosetta Kearse.

The court further found that at the time· of the execution of the contract involved herein, Eunice Kearse was . a non compos. mentis and incapable of contracting, and that she was not bound by the agreement and that the same is not enforceable. The court further adjudged that R. C. Kearse was not entitled to recover on his claim for $650 paid W. J. Kearse, to which judgment both parties, plaintiff and defendants, excepted in the respects that the same was adverse to their contentions, and, on the overruling of their respective motions for a new trial, they

each excepted. The plaintiff has perfected her appeal and assigned errors, and the defendants have filed cross-assignments of error.

Appellant contends that the trial court erred in adjudging the 66-acre tract in question to be .community property and in refusing to hold that the same was the separate property of Rosetta Kearse.

As hereinbefore stated, Rosetta and Calhoun Kearse, while permanently separated, were never divorced. The consideration for the conveyance of the 144 acres of land by Mrs. Bibbee to her mother was $3,100, all on credit, for which notes were executed, and were never paid except in the manner hereinbefore stated; that is to say, owing to the increase in the value of the land, Mrs. Bibbee agreed to accept, and did accept a conveyance from her mother, joined in by her father, of 80 acres of the land, plus a small amount of money paid by some of the children, in full payment of the amount she held, and thus the 66-acre tract, being the increase in market value of the 144 acres, was, in our opinion, community property.

Community property, at the time of these transactions, was defined as follows:

"All property acquired by either husband or wife during the marriage, except that which is acquired by gift, devise or descent, shall be deemed the common property of the husband and wife." Article 4622 (2968) Revised Statutes.

[1] Property purchased by the wife entirely on credit is not acquired by either gift, devise or descent, and therefore its status is that of community property. Heidenheimer v. McKeen, 63 Tex. 229; Goddard v. Reagan, 8 Tex. Civ. App. 272, 28 S. W. 352.

[2] The marriage relation can only be dissolved by death or judicial decree. At the beginning and during the entire existence of this relation, the law establishes a community of interests in all property acquired by either spouse, except that which is acquired by gift, devise, .or descent. This partnership or community interest is not based in any sense on the idea of equality or contribution of labor or capital by the respective spouses, but exists on principles of a perfect union and equality of enjoyment of gains, regardless of inequalities induced by sickness, idleness, habits, or otherwise; it grows out of and depends upon the existence of the marital relation and not merely upon the existence of the family.

A leading case that illustrates the correctness of the statement just made is Routh v. Routh, 57 Tex. 589. In this case the second wife of the deceased, while living with her husband in another state, was guilty of such outrages towards him as rendered their living together insupportable. By mutual consent they separated; the husband came to Texas with the children of a former mar-

riage, and, after reaching Texas, married a third time to a woman who was ignorant of the fact that he then had a living wife. Afterwards, and during the coverture with this third wife, he acquired real estate in Texas, which he owned at the time of his death. The interests of his third or putative wife was not involved in the suit, which was a controversy between the second wife, claiming a community interest in the lands acquired in Texas, and a son of the first wife, claiming as heir of his father.

The court held in that case that the marital relation, when once formed, continues until terminated by death or judicial decree; that this relation secures to the wife a community interest in all the property that may be thereafter acquired by either of the parties, except such as may be obtained by gift, devise, or descent; that the rights of the parties resulting from the marriage relation are fixed by statute, and that the separation of the second wife from her husband did not under the circumstances work a forfeiture of her subsequently acquired community rights to land purchased and owned by him in Texas.

In the case of Chapman v. Chapman, 11 Tex. Civ. App. 392, 32 S. W. 564, the following language, on this point, was used:

"The community estate is created by law as an incident of marriage, and does not arise from contract between the parties. It is created by law only as between those who occupy towards each other the relation of husband and wife."

[3] The 66-acre tract was acquired during the existence of the marriage relation between Calhoun and Rosetta, and was not acquired by either gift, devise, or descent, and is, therefore, clearly within the statutory definition of community property and within this doctrine announced by the courts. .

The permanent separation of Calhoun and Rosetta, and the fact that she was left without a home, with four minor children to rear, educate, and support, clothed her with a power to contract that she would not have possessed otherwise; but the power to contract, under these conditions, is one question, whilst the status of property acquired as the result of such contracts is another and an entirely different question. The statute is inexorable in its meaning wherein it provides that all property acquired by either husband or wife during the marriage, etc., shall be deemed common property. So there is nothing in the fact that the land was acquired as the result of a contract made by the wife under these circumstances to give a different status to the property acquired.

Appellant further insists that the 66-acre tract of land became the separate property of Mrs. Kearse by virtue of the terms and the legal effect of the conveyance to her by Mrs. Bibbee. This contention is based on the lan-

guage of this conveyance, in which it is recited that the land was conveyed to her "as her separate property," and, further in the habendum clause of the conveyance this language is used: " * * * unto the said Mrs. Rosetta Kearse as her separate property, her heirs and assigns, forever."

[4] Cases can be found where third persons conveyed property to the wife during the marriage, which show the purpose to make it her separate estate by directly so stating, as was done in the conveyance under consideration, or by stating that it was a gift, or that the consideration was paid out of her separate estate. The effect of such language is to create a presumption that the property conveyed is to be the separate estate of the wife, but this presumption is only prima facie and not by any means conclusive.

[5] Wherever the consideration paid for property is shown to have been community funds, the presumption is that the property conveyed to the wife is community, unless it further appears that the husband caused the deed to be made to his wife, in which case it would be an acquisition by gift and would become the separate property of the wife. The facts of this case show that the consideration for the 66-acre tract was community property, and it nowhere appears that Calhoun Kearse caused, or had anything to do with, the execution of the deed containing these recitals, or that he in fact knew of the deed until after its execution.

To permit a third party, acting either alone or at the instance of one of the spouses, by the use of apt language, such as is contained in the conveyance under consideration, to change the nature of property from community to that of the separate property of one of the spouses, would sanction the commission of a fraud. To accomplish such a metamorphosis, the spouse whose interest will be affected thereby must assent in some way known to the law.

In the case of Kahn v. Kahn, 94 Tex. 114, 58 S. W. 825, Judge Williams, for the Supreme Court, reviewed at somewhat at length the different classes of cases in which property was conveyed to the wife, and the presumptions arising under the peculiar facts of the case. In no case was it held that the presumption arising from the use of language in a deed similar to that used in the conveyance under consideration from a third party to one of the spouses was conclusive of the issue, but to the contrary the presumption is considered prima facie and rebuttable. This idea of the law is confirmed by the decision of the Supreme Court in McCutchen v. Purinton, 84 Tex. 603, 19 S. W. 710. Mrs. Purinton acquired title to the property by a deed that recited that the consideration was paid out of her separate property and that the land was conveyed to her as her separate property. The land was afterwards sold under execution issued on a judgment against her husband. Later, in a contest over the land between the heirs of Mrs. Purinton and those claiming under the judicial sale, no evidence was offered to prove that the purchase money was the separate property of Mrs. Purinton, and, therefore, on this point, the case rested on the presumption arising from the recitation in the deed. In disposing of the case the Supreme Court, in an opinion by Judge Henry, said:

"The questions upon which the case turns are: Do the express recitals of the deed overcome this presumption [the presumption in favor of its being community property]? Can they be treated as evidence of the source of the consideration? * * * We can see no good reason why a deed containing such recitals should not remove the presumption that would exist in favor of the community in their absence, and be given the effect, when uncontradicted or unexplained, of vesting the title according to the terms of the deed. If such recitals are untrue and the payment of the consideration was in fact made with community funds, the evidence thereof would be admissible in a proper case to establish a resulting trust in favor of the community estate, as in other cases where the title is conveyed to one party and the purchase money is paid by another."

We thus see that the presumption that arises either from the presence or the absence of such recitals in a deed of conveyance is only prima facie and may be rebutted in a proper case. As the evidence in this case showed that the consideration paid for the land was community property, and that its acquisition was not by gift from the husband, the presumption arising from the presence of the language in the deed from Mrs. Bibbee to her mother is conclusively rebutted.

Appellant's assignments and propositions, having been carefully considered, are found without merit and are overruled.

[6] Appellees urged in cross-assignments the proposition that the court erred in holding the agreement between Mrs. Rosetta Kearse and R. C. Kearse, entered into at Huntsville November 7, 1919, unenforceable and not binding on Mrs. Kearse.

As hereinbefore stated, Calhoun Kearse devised to the girl, Eunice, a life estate in all his property with remainder to R. C. Kearse. According to our view, he owned at the time of his death an undivided one-half community interest in both tracts of land; that is, in the 66-acre tract, subject to the homestead right of Mrs. Kearse, and also in the 80-acre tract. The only authority possessed by R. C. Kearse to deal with the life estate of Eunice was that of trustee, to manage and control the same, and to appropriate the revenues and proceeds therefrom for her support and maintenance.

In the agreement referred to, the executor undertook, in consideration of the obliga-

tions assumed by Mrs. Kearse, that as soon as the will of Calhoun Kearse was probated he, as independent executor of said estate, would convey to Mrs. Kearse all the right, title, and interest of said estate in the 66-acre tract, and also certain personal property, and she, in turn, obligated herself to convey all her interest, right, and title in the 80 acres to R. C. Kearse as such executor. The court held that, because Eunice was a non compos mentis and incapable of contracting, she was not bound by his agreement and that the same was unenforceable. We are of the opinion that the conclusion reached by the trial court is correct.

R. C. Kearse was not authorized as independent executor to exchange the interest of Eunice in the 66-acre tract for the interest of Mrs. Kearse in the 80-acre tract, nor was he authorized to agree to a partition, and it was clearly beyond his competency to bind the future action of the courts or guarantee results. The life estate of Eunice in the 66-acre tract could not be divested and exchanged for the interest in another tract owned by Mrs. Kearse in any way short of judicial proceedings. The result of such proceedings could not be guaranteed by R. C. Kearse acting in any capacity.; in fact, his undertaking in this respect was clearly against public policy and void. The agreement was wanting in mutuality, imposed no legal obligation, was a matter legally impossible of performance, and constituted no consideration.

In the case of Specht v. Collins, 81 Tex. 213, 16 S. W. 934, the suit was based on an agreement of the surviving husband to convey certain lands as soon as administration could be opened on the estate of his deceased wife. With reference to such an undertaking, the court said:

"There is nothing alleged in the petition or appearing in evidence to show that he [the defendant] could bind the estate by the supposed contract. It does appear that he was not to act in the premises until after administration on the estate. He had no power, in the absence of facts that would give him sole control of the estate, to make a contract that would bind the estate and bind the court under whose orders the estate should be administered. He could not stipulate the terms of a sale to be made under the orders of the probate court. He could not so contract for the court's action to grant an order of sale or to approve of it if it should be made according to the terms of his proposition, even if he should himself become the administrator. The law fixes the manner of administration, the conditions authorizing sales of land; and when the sale is permitted by the law and ordered by the court the sale and its terms are subject to the approval or disapproval of the court. All this process would necessarily have to be followed to effect a valid sale under administration. Defendant could not contract for other methods of selling the estate unknown to the law and in violation of it. If the alleged contract means anything it means that nothing can be done in performance of the same until after administration. Defendant could not pledge the course of administration and the orders of the court. Plaintiff knew this,. and both the parties are presumed to know that public policy and the policy of the law were opposed to such a contract. The tendency of the contract was illegal, and it contemplated a violation of, if not a fraud upon, the estate and the court."

The obligations assumed by Mrs. Rosetta Kearse in the agreement in question were based, not only on the consideration that she should acquire the interest of R. C. Kearse, the remainderman, in the 66-acre tract, but that she should also acquire the interest of the afflicted girl Eunice, the life tenant. No one was authorized to bind the estate of this girl except some one acting under the orders of a court of competent jurisdiction, and for R. C. Kearse to attempt to do so by the agreement in question was illegal, and, as stated in the case above, was a fraud, not only on the estate, but on the court.

Furthermore, the evidence, in our opinion was sufficient to sustain the allegations of plaintiff that she was overreached and unduly influenced by threats of litigation made by her son, R. C. Kearse. In her disturbed condition of mind, considering her age, ill health, and want of experience in such matters, she was deprived of her free agency to contract and the instrument executed did not properly express either her will or intent. The cross-assignments of appellee are therefore overruled.

It is our opinion that the facts fully sustained the judgment, that the same is in accordance with law, and that justice was reached; therefore the judgment below is affirmed.

Affirmed.

## On Motion for Additional Findings of Fact.

In response to appellant's request for additional findings of fact, the following are filed:

(1) After Calhoun Kearse purchased the 144-acre tract of land from J. B. Watkins June 2, 1893, and before he and Rosetta Kearse, his wife, conveyed the same to their daughter, Mrs. Bibbee, September 13, 1898, the land was improved by him, by putting more land in cultivation, building fences, rebuilding and repairing houses, etc., all of the value of about $600.

(2) This land, during the year 1898, was of the reasonable market value of from $30 to $35 per acre.

(3) In the deed executed by Mrs. Bibbee January 11, 1898, in which she conveyed the 144-acre tract to her mother, Mrs. Rosetta Kearse, the following, among other, language is employed: " * * * as her separate property," and in the habendum clause of the deed the following occurs: " * * * unto the said Mrs. Rosetta Kearse as her

separate property, her heirs and assigns forever."

(4) Mrs. Bibbee knew, when she sold the land to her mother as above stated, that she was not getting its full value, but she was unwilling to speculate at her mother's expense; her only desire was to receive for. the land a sufficient sum to return her original investment plus interest, but she would not have sold the land to any one else at that price.