KEARSE v. KEARSE et al. (No. 688–4241.)*

(Commission of Appeals of Texas, Section A. Oct. 28, 1925.)

1. **Constitutional law ⊚═48—Husband and wife ⊚═247 — Statute permitting purchaser and seller to include in conveyances any clauses deemed advisable held not unconstitutional as permitting them to exclude from community estate property required by Constitution to be included.**

Rev. St. 1911, art. 1108, providing that no person shall be restrained from inserting in conveyances clauses deemed proper and advisable by purchaser and seller, is not unconstitutional as giving purchaser and seller power to exclude from community estate property which Const. art. 16, § 15, requires to be included therein, as such constitutional provision must be read in connection with the statute.

2. **Husband and wife ⊚═256—Deed by daughter to mother held not conclusive that land conveyed was to be separate property of mother.**

Where daughter, at request of father, purchased notes for deferred payments of land bought by him, and, after separation of father and mother, they conveyed to daughter land conceded to be community property in consideration of cancellation of such notes, subsequent deed of daughter to mother, reciting consideration of $3,100 to be paid by series of 10 notes, of which her father knew nothing until long after execution of deed, was not conclusive that land conveyed thereby was to be separate property of mother.

3. **Husband and wife ⊚═254—Property sold by a daughter to mother for substantial consideration held to become community property of mother and her husband.**

Where daughter, prior to separation of father and mother, bought notes given by father for land, and, after separating, her parents

conveyed it to her, and she afterward conveyed it to mother, who was to pay $3,100, for which daughter retained vendor's lien, such land was not gift to mother, and it became community property of her and her husband.

**4. Gifts ☞5(2)—"Gifts" and "onerous consideration" held exact antitheses.**

"Gift" and "onerous consideration" are exact antitheses.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Gift.]

**5. Husband and wife ☞264 — Evidence held sufficient to uphold findings of trial court that reconveyance of land amounted to sale thereof to pay debt contracted in previous conveyance of land by daughter to mother.**

In action by widow to recover land as her separate property, and for one-half community interest in another tract of land, evidence *held* sufficient to uphold finding of trial court, either actual or implied, under Rev. St. 1911, art. 1985, that conveyance by husband and wife of 80 acres, in which wife claimed one-half community interest, amounted to sale thereof to pay debt contracted for on conveyance by daughter of 144-acre tract of land to mother, overcoming theory that such conveyance was gift, making land conveyed thereby mother's separate property.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Suit by Rosetta L. Kearse against R. C. Kearse and others. Judgment of Court of Civil Appeals, affirming judgment below, and plaintiff brings error. Judgment of district court and of Court of Civil Appeals affirmed.

For opinion of Court of Civil Appeals, see 262 S. W. 561.

J. C. Lumpkins and G. C. Groce, both of Waxahachie, for plaintiff in error.

C. M. Supple and Will Hancock, both of Waxahachie, for defendants in error.

### Statement of the Case.

NICKELS, J. Calhoun and Rosetta Kearse were lawfully married in 1869. The marital relation was not extinguished otherwise than by the death of Calhoun in September, 1909. There was a continued living apart after September, 1898; Rosetta without just cause having brought this about. In January, 1893, Calhoun Kearse purchased 144 acres of land, situated in Ellis county; the consideration being $200 paid in cash and $2,059.80 "to be paid," evidenced by a series of notes payable yearly from 1894 to 1899, inclusive. None of the deferred payments were made, except as to some interest, and in June, 1898, Mrs. Bibbee, a daughter, purchased the notes at the request of Calhoun. In September, 1898, shortly after the separation, Mr. and Mrs. Kearse executed to Mrs. Bibbee a warranty deed, conveying the 144 acres, in consideration of cancellation of the notes. Within a

short time Rosetta Kearse requested Mrs. Bibbee to "sell the land back to her," and this led to a conveyance by warranty deed January 11, 1899, from Mrs. Bibbee to Rosetta. The recited consideration was $3,100, which was "to be paid," and which was evidenced by a series of 10 notes, one being payable each year thereafter. The recited consideration in whole or part was never paid otherwise than in the manner to be stated. Calhoun Kearse had no connection whatever with these transactions between Mrs. Bibbee and Rosetta until January 5, 1901. On that date Calhoun joined Rosetta in a conveyance of a certain 80 acres (of the 144-acre tract) to Mrs. Bibbee. The recited consideration of this conveyance was $1,600 cash. The 80 acres thus conveyed to Mrs. Bibbee was, in turn, conveyed by her to R. C. Kearse (November, 1903) and by him (October, 1904) to his father, Calhoun. Calhoun Kearse died September —, 1909. In the trial court and Court of Civil Appeals the 80 acres referred to was treated as being community property, and no question with respect to it remains in the case. Those courts also ruled the 66 acres to belong to the community estate of Calhoun and Rosetta, and that holding is the error now claimed. See 262 S. W. 561, for the opinion of the Court of Civil Appeals.

### Opinion.

In substance, the claim of the 66 acres as separate property of Rosetta Kearse rests upon two contentions: (a) The import of the deed of January 11, 1899, is conclusive of that status; (b) Mrs. Bibbee's act effected a gift to Rosetta.

[1] 1. Article 1108, R. S. 1911, in part, declares that no person shall "be restrained from inserting any clause or clauses in conveyances hereafter to be made, that may be deemed proper and advisable by the purchaser and seller." The deed under review recites the grant as being to Rosetta Kearse "as her separate property," and the habendum as being "to the said Mrs. Rosetta Kearse as her separate property, her heirs and assigns forever." Upon authority of the statute, as upon that liberty of contract vouchsafed in requirements of due process, it is asserted the deed indubitably attaches to the property a separate character.

The due process, whose absence is suggested if a different effect be given the deed, is supplied by constitutional provision antedating the transaction. If the property, despite the language used in the deed, is community, it is so because of those constitutional provisions (and pre-existing statutes), with knowledge of whose existence and meaning the parties contracted. And for like reason, if article 1108, R. S., means to give a "purchaser and seller" the power to exclude from the community estate property

which section 15, art. 16, of the Constitution, requires to be included, manifestly the statute is void. But no such interpretation can rightly be given it. Constitutional limitations are read into a statute such as this so as to restrict literalism to proper bounds. The article in its application here is to be viewed as if it read, "Except as otherwise provided in section 15, article 16, of the Constitution, the insertion of any clause deemed proper or advisable by the purchaser and seller is not inhibited."

The insistence upon the form of the deed as conclusively defining the property is based upon a misinterpretation of the opinions in Zorn v. Tarver, 45 Tex. 519; Id., 57 Tex. 388; Kirk v. Navigation Co., 49 Tex. 213; Morrison v. Clark, 55 Tex. 443; Ullmann v. Jasper, 70 Tex. 446, 7 S. W. 763; Laufer v. Powell, 30 Tex. Civ. App. 604, 71 S. W. 549; Kahn v. Kahn, 94 Tex. 114, 58 S. W. 825; and Goldberg v. Zellner (Tex. Com. App.) 235 S. W. 870. In the Zorn Case evidence extrinsic the deed was considered, and the trial court's finding that the proof rebutted the presumption that the land "was bought with community property" was approved. 57 Tex. 391. There the grantor, with consent and aid of the husband, made a gift to the wife, although she adopted an indirect method of doing it.

Kirk v. Navigation Company involved the rights of innocent purchasers. The deed named the wife as grantee, and recited the consideration was "paid by her," but it did not say the consideration was paid with her separate funds. It was held the recitals were insufficient to charge the subsequent purchaser with notice that the land was not community property, and therefore extraneous proof to show its separate character was improper.

Morrison v. Clark: The husband made a gift of property to his wife, and then "for her" traded the property for land. At his instance the conveyance was made "to her, and her only sole use and benefit." Afterward, and to a subsequent purchaser, he declared "he had no title or interest in the land." The opinion (written by the Commission of Appeals) contains language which is subject to the interpretation that parol evidence to show the property's community status would be inadmissible in the case of such a deed, since the deed was so made at the husband's instance, and without any recital which might indicate the transaction was not intended to effect a gift. But, after using that language, the Commission of Appeals then examined the extrinsic evidence in the record, and held it to be sufficient to show a gift to the wife.

Ullmann v. Jasper: A deed there under consideration was made "to the separate use of Mrs. Grant." Mrs. Grant and her husband conveyed the land to Jasper, and thereafter Ullmann attempted to subject it to payment of judgments against the husband. The court said that:

"If, in fact, the purchase was made by her [i. e., with her separate funds] the deed took effect in conveying the lots to her separate estate.

In Laufer v. Powell, the Court of Civil Appeals simply construed a deed containing this language: "To have and to hold and enjoy and dispose of the said land in any and every manner" the said Mary "may think proper for her own use, benefit, and behoof," and held it effective to vest the property in the wife (Mary) as her separate estate. No issue of a contrary intent or effect was raised in pleading or proof except as based on the language of the deed itself. Consequently, the court made no ruling as to the propriety of extraneous evidence.

Kahn v. Kahn: Property was conveyed (by a third person) to the wife for a consideration of $525, of which $200 was paid out of her separate funds, $50 was paid with the separate funds of the husband, and the remainder was paid with community funds. For the purpose of getting a loan the land was conveyed to Barwise by the husband and wife, and later, the purpose having failed, Barwise conveyed it to the husband. The wife then demanded that the husband convey it to her, and he did so by deed reciting a consideration of $500 "paid by" the wife "out of her separate funds and for her separate use and benefit." Thereafter they were divorced, and in a subsequent contest between them about the character of the property it was held that parol evidence was inadmissible in the absence of "proof of fraud or mistake in the insertion of the recitals in the deed" to show "that the maker of it did not intend to convey the property to his wife as her separate property, and this for the reason that the deed on its face clearly expressed such intent."

Goldberg v. Zellner: The deeds there considered were made to the wife "for her separate use and benefit." The Commission of Appeals held that the language evidenced an intent "to transfer the land to her separate estate," and "there is in the record no evidence of sufficient probative force to set these recitals at naught," and that the property, therefore, was a part of her separate estate.

[2] A consideration of the facts next recited will demonstrate the inapplicability of anything in the cases cited supposed to be in conflict with the ruling of the Court of Civil Appeals in this case. No rights of innocent purchasers are involved. The deed was not given its form at the direction or with the knowledge of Calhoun Kearse. It was not his deed. He knew nothing of its making until long afterward. It recites onerous consideration of deferred payments (and none other), and does not say this is to be paid with the wife's separate funds. The one

fact of recited onerous consideration, of itself, negatives the idea of a gift (prima facie, at least), and this, with the other facts just stated, renders the deed inconclusive of a separate status for the property.

[3] 2. Arnold v. Leonard (Tex. Sup.) 273 S. W. 799, must be regarded as determinative of the proposition that the 144 acres conveyed by the deed of January 11, 1898, became community property, unless it was the subject of a gift to Rosetta Kearse. And the fact that substantial consideration was to be paid precludes the idea of a gift. Hiedenheimer v. McKeen, 63 Tex. 229. All negotiations between Mrs. Bibbee and Mrs. Kearse were carried on by mail. Mrs. Kearse says:

"I just wrote my daughter, and asked her if she would sell me the land, and she did execute to me the deed, * * * and there was no agreement or understanding one way or the other between me and my daughter, Mrs. Bibbee, in respect to this transaction other than as is shown in said deed."

[4] The "agreement or understanding * * * shown in the deed" is sale of the land for a consideration of $3,100, and the retention (by Mrs. Bibbee) of a lien and the superior title to enforce payment of that sum. "Gift" and "onerous consideration" are exact antitheses. The idea of their co-existence involves a paradox. 20 Cyc. 1192.

The deed contains no indication that the money should be paid with separate funds, and Mrs. Kearse did not, then or thereafter, have such with which to pay. The deed was not made, much less given its form, by (or at the instance or with the knowledge of) Mr. Kearse. The 144 acres upon delivery of the deed were included in the community estate. What subsequently happened was impotent to exclude from that estate what remained of the tract. These incidents preserved the community status and impressed it even more firmly on the property.

[5] For the debt was paid January 5, 1901 (in the main, at least) by a reconveyance of 80 acres (of the 144) to Mrs. Bibbee, made by the husband and wife. That deed recited a cash consideration of $1,600, and contained nothing to indicate any purpose or intention other than as of a sale. The $3,100 of notes, however, were canceled as a result of the transaction, and the 66 acres left free of the debt. The evidence is amply sufficient to uphold the finding of the trial court (actual or implied, article 1985, R. S. 1911; Cobb v. Robertson, 99 Tex. 138, 86 S. W. 746, 87 S. W. 1148, 122 Am. St. Rep. 609) to the effect that the conveyance amounted to a sale of the 80 acres to pay the debt and nothing more, if in fact there be any evidence of different import. There was in the transaction, therefore, no element of a gift to Mrs. Kearse.

It is contended, however, that some of the other children made up a fund of $300 and gave it to Mrs. Bibbee (and that she assumed a loss of $100) so as to make up the supposed difference between the value of the 80 acres and the debt, and that this evidenced a gift to Mrs. Kearse. But, if these contributions were made by the children (and about this there is dispute), the testimony shows as consistently that whatever gift there may have been was as much for the benefit of the community estate as for the benefit of Mrs. Kearse's separate estate. Findings implied in support of the judgment are necessarily against the contention, and these findings have support in the evidence. R. C. Kearse conducted the transaction for his mother and father, and his testimony squarely negatives the "contribution" or "assumption of loss" mentioned.

Argument is made, also, that the value of the 144 acres when Mrs. Bibbee conveyed the land on January 11, 1899, was greater than the amount of her investment, and that (since she only desired to get back that amount) it was a gift of the excess value, and that this gift was imported into the subsequent transaction (January 5, 1901) wherein the 80 acres was conveyed. But, in the first place, the trial court reasonably could have found (as it must be assumed to have found) that the amount ($3,100) of notes included whatever value there was. For, according to Mrs. Bibbee's testimony (as well as that of R. C. Kearse), the 80 acres was valued at $20 per acre on January 5, 1901; and that the land then (in Mrs. Bibbee's judgment) did not have a value in excess of that figure is shown by her testimony to the effect that her investment really amounted to $1,957, and the children (including her) contributed $400 so as to make up the difference between the $1,957 and the value of the 80 acres, and she sold the same 80 acres in November, 1903, for $1,700. There was testimony also tending to show the land was worth more on January 5, 1901, than it was on January 11, 1898. On the same basis of value the 144 acres was worth $2,880 on January 5, 1901, and something less on January 11, 1898. There are other facts and circumstances bearing on the matter, but this is sufficient to indicate that the amount ($3,100) of the notes may have covererd the full value of the 144 acres. And yet Mrs. Bibbee at the time of the execution of the notes only had an investment of $1,957 in the land. The testimony is such as that the trial judge could have taken that view of the matter, and, we presume, findings to support the view. In this situation there is no room for presumption that Mrs. Bibbee intended to make or did make a gift (to anybody) to the extent of the increase (if any) in the value, for she took notes sufficient in amount to include it all. An onerous consideration attached to every part and the whole of the land, to each and every element of value, and the passing

of superior title to any of it was conditioned upon payment.

We are convinced that the honorable Court of Civil Appeals made the right disposition of the case, and that its opinion correctly states and applies the law. We recommend, therefore, that the judgments of the district court and of the Court of Civil Appeals be in all things affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.