### GEORGE v. REYNOLDS.

#### No. 980.

Court of Civil Appeals of Texas. Eastland.
May 3, 1932.

Rehearing Denied October 14, 1932.

Allen D. Dabney, of Eastland, and Blanton, Blanton & Blanton, of Abilene, for appellee.

LESLIE, J.

J. B. George died in Shackelford county, Tex., January 17, 1931, leaving an estate in personal property valued at $7,500. He willed the property to two orphan homes and appointed A. W. Reynolds independent executor of his estate. The executor probated the will. Mrs. Helen George, the surviving wife of the deceased, filed an application in the probate court asking a widow's allowance in lieu of homestead, etc. Such an allowance was made by that court, and the executor appealed to the district court. In the district court Mrs. George filed an independent suit against the executor, asking that that court fix the allowances granted the widow by law in lieu of a homestead. In said suit she also made claim to one-half of the estate as community property of herself and deceased husband. The two suits were consolidated in the district court and a trial was had which terminated in an instructed verdict against the plaintiff, Mrs. George, and she prosecutes this appeal. The parties will be referred to as in the trial court.

The disposition of this appeal rests upon a decision by this court of two questions: (1) Was the plaintiff, Helen George, entitled to the widow's allowance? (2) Did she have a one-half interest in the property as community?

In substance, the facts are that J. B. George and Helen George were married October, 1894, lived together until July, 1899, at which time they entered into a separation agreement to the tenor following:

"The State of Texas, County of Shackelford.

"This agreement, made and entered into this the 5th day of July, A. D., 1899, by and between J. B. George, party of the first part, and Nellie E. George, party of the second part, witnesseth, that whereas said parties, being husband and wife, and finding it impossible to continue further to live together in harmony and unity as such, have mutually agreed to immediately separate 'and ever afterwards live apart from each other, and have to all intents and purposes actually separated and desire to make said separation permanent, now therefore, in consideration of the premises and' for the purpose of settling our property rights for all time to come, do enter into the following agreement, to-wit:

"1. The party of the first part has this day and does by these presents pay unto the party of the second part Eight Hundred ($800.00) Dollars in cash, the receipt of which is hereby acknowledged by the party of the second part, and the party of the first part further agrees and binds himself that whenever he shall sell all or any portion of the lands which he now

Scarborough, Ely & King, of Abilene, for appellant.

owns and which he derives as an heir at law of his mother, now deceased, or through the will of his said mother, he will immediately upon consummation of such sale pay to the party of the second part one-half of whatever amount of money he may obtain upon such sale of said land or any part thereof.

"2. In consideration of the foregoing covenants on the part of the party of the first part the party of the second part hereby releases the party of the first part from all claims, duties and liabilities both in law and equity for her maintenance and support, and she further agrees and binds herself forever not to in any manner whatsoever interfere with said party of the first part in his business or social affairs, and that she will never in any way call upon him for any contribution of his means or time for her assistance, maintenance or support, nor shall the party of the first part ever be liable for any debts contracted or to be contracted by the party of the second part, even though they be for necessaries for the support of herself and children, and she releases hereby all interest whatever that she may have in and to any real estate or personal property which may be now in the possession of the party of the first part or which he may ever become possessed of except as hereinbefore specified,—that she is entitled to one-half of the money which may at any time be realized from the sale of the lands above mentioned. "Witness our hands this the 5th day of July, A. D., 1899.

"J. B. George
"Mrs. Nellie E. George."

At the date of the marriage, Mrs. George, a widow, had two children by a former marriage, and thereafter a child, Sarah, by this marriage. Immediately upon the execution of the above instrument, Mrs. George returned to her former home in Detroit, Mich., and she and her husband never lived together again as husband and wife. Neither of them procured a divorce. Some thirty-one years after the date of the separation Mr. George died, and she returned to Texas to claim the above specified rights.

The terms of the separation agreement were strictly complied with by Mr. George, and the fairness of the division of the property then on hand is not questioned.

The defendant, or the executor of the estate, resists the claim of Mrs. George on the ground that she, without cause, voluntarily abandoned her husband at the time of the agreement, thereby forfeiting her rights to said allowances, and that by the execution of the contract above set out she ceased to have any interest whatever in the property allotted to said George, or such as he thereafter acquired, the contention being that property thereafter-acquired by said George was by said agreement converted into his separate property.

The plaintiff, Mrs. George, also contends that the separation from her husband was originally brought about by cruelty upon his part, rendering their further living together insupportable. In substance the cruelty is alleged to consist in his penurious, disagreeable disposition, and the insistence on his part that she give up her first two children and place them in an orphans' home. That under the influence of such treatment she was coerced into signing said agreement against her will, and that it became necessary for her to separate herself and children from his home, and as a result thereof she was compelled to return to her old home in Detroit, where her mother resided.

As stated, the court instructed a verdict in favor of the defendant. It therefore becomes necessary for this court to examine the testimony to ascertain if the trial court erred in this respect. It also becomes our duty to view the testimony from the standpoint of the plaintiff and to take as true the testimony tendered by her in determining whether or not the court erred in failing to pass to the jury any material issue of fact raised by the pleadings and the testimony.

As noted, it is the contention of the executor, or defendant, that the plaintiff, without cause, abandoned her husband, the deceased, for a series of years (thirty-one), and thereby forfeited her right to the widow's year's allowance and the allowance in lieu of a homestead. This contention presents a correct proposition of law and should be sustained when borne out by the facts. Our Supreme Court has many times so held. Linares v. De Linares, 93 Tex. 84, 53 S. W. 579; Cockrell v. Curtis, 83 Tex. 105, 18 S. W. 436; Good v. Good (Tex. Civ. App.) 293 S. W. 621; Markley v. Barlow (Tex. Civ. App.) 204 S. W. 1013; Hollie v. Taylor (Tex. Civ. App.) 189 S. W. 1091; Dugat v. Means (Tex. Civ. App.) 91 S. W. 363.

It is equally as well settled that the wife's separation from the husband, brought about by his cruel and unjustifiable treatment, does not defeat or forfeit her right to an allowance in lieu of a homestead. Linares v. De Linares, supra.

With these principles in mind we have carefully reviewed the testimony in this case and reach the conclusion that there was presented, both by the pleadings and the testimony, an issue of fact on the trial of this case as to whether or not Mrs. George, without just cause or excuse, abandoned her husband and returned to her former residence in the state of Michigan. Whether she did so with or without good cause is, in the state of this testimony, a question of fact for the jury. Sears v. Sears, 45 Tex. 557; Newland v. Holland, 45 Tex. 588.

We do not set out the testimony as it would unduly lengthen the opinion. In the

main it is to be found in the testimony of Mrs. Smyington, as well as that of the plaintiff. The testimony is not in all respects satisfactory, but it did call for the submission of the issue to the jury. Certainly the testimony on this phase of the case is not conclusive in favor of the defendant, which would be necessary in order to authorize an instructed verdict for the defendant. Neither is the testimony of such a nature, when viewed from the standpoint of the plaintiff, as to justify an instructed verdict in her favor, as contended in her brief.

The assignments challenging the correctness of the court's order in directing an instructed verdict on the above issue are sustained.

We pass to the plaintiff's further contention that the property left by the deceased is the community property of herself and husband, and that she is now entitled to her one-half interest therein under the facts and regardless of the terms of the agreement hereinbefore set out.

█ In dealing with this question, it is recognized that a postnuptial contract between the husband and the wife who have already separated, or have determined upon a separation and are in the act of executing it, will be upheld when fair and equitable. Rains v. Wheeler, 76 Tex. 390, 13 S. W. 324; Cox v. Mailander (Tex. Civ. App.) 178 S. W. 1012; Kuehn v. Kuehn (Tex. Civ. App.) 232 S. W. 918; Skeen v. Skeen (Tex. Civ. App.) 190 S. W. 1118; Caffey's Ex'rs v. Caffey, 12 Tex. Civ. App. 616, 35 S. W. 738; Versyp v. Versyp (Tex. Civ. App.) 159 S. W. 165.

But the recognition of this rule does not imply that by such contract the husband and the wife have the power to change, by a mere agreement made in advance, the status of community property thereafter to be acquired and to come into existence and make the same the separate property of either the husband or the wife. Brokaw v. Collett (Tex. Com. App.) 1 S.W.(2d) 1090, 1091; Proetzel v. Schroeder, 83 Tex. 684, 19 S. W. 292, 294; Const. art. 16, § 15; articles 4610, 4613, 4615, 4619, R. S. 1925.

In the authority first cited it is said: "A husband and wife do not have the power to change, by mere agreement, made in advance, the status of community property yet to be acquired, and yet to come into existence, to that of the wife's separate property."

Numerous authorities are there cited in support of the proposition, and the additional statement is made that: "It does not lie in the power of the husband and wife by contract between themselves, made in advance, to set aside the Constitution of this state, as applied to the wife's separate property rights."

The opinion in Proetzel v. Schroeder dealt with a postnuptial contract and discussed the public policy involved in the enactment by the Legislature of article 4610, dealing strictly with antenuptial contracts. It was there observed: "The statute does not in express terms include nuptial contracts. But there is better and stronger reason why the same principle which would prevent those entering into marital relations from making a contract or agreement that would have the effect the law seeks to guard against should render invalid a contract made after such relations were contracted by the parties. In contemplation of law the wife is then under the dominion and control of her husband. This instrument, in so far as it sought to deprive Mrs. Schroeder of her community property * * * is absolutely void."

█ In the instant case the parties, by the separation agreement, divided their property then on hand and adjusted their rights in the same, and, in substance, went further in the contract and undertook to provide that all property acquired after the separation by either spouse should be the separate property of the spouses respectively. But in that respect the contract is believed to be void and unenforceable. If it was not so, the parties could, by contract, change the status or nature of property acquired after marriage and do so in the face of the statutes and the Constitution fixing the property rights between husband and wife and defining what is separate and what is community property. Such an arrangement would, in effect, and indirectly at least, permit them to alter the orders of descent with respect to persons and property.

In Arnold v. Leonard, 114 Tex. 535, 273 S. W. 799, our Supreme Court held that, since the Constitution, art. 16, § 15, provided that property acquired by the wife during coverture by gift, devise, or descent becomes her separate property, the Legislature is therefore prohibited from saying that property acquired after marriage in some other mode may also become the wife's separate property. If the Legislature cannot change the status or nature of property acquired during the marital relation, evidently the parties themselves are without power to do so by contract. If it be held that they have such power, then their act in doing so would be in the face of the statutory and constitutional definitions of separate and community property.

In discussing the opinion of our Supreme Court in the case of Routh v. Routh, 57 Tex. 589, the court in the case of Kearse v. Kearse (Tex. Civ. App.) 262 S. W. 561, 564, said: "The court held in that case that the marital relation, when once formed, continues until terminated by death or judicial decree; that this relation secures to the wife a community interest in all the property that may be thereafter acquired by either of the parties, except such as may be obtained by gift, devise, or descent; that the rights of the parties resulting from the marriage relation are fixed by statute, and that the separation of the sec-

ond wife·from her husband did'not under the circumstances work a forfeiture of her subsequently acquired community rights to land purchased and owned by him in Texas."

We do not believe the statutory and constitutional classifications of property rights as between husband and wife can be altered -by postnuptial contract, as attempted in this case, and if, under the facts, there is to be found in the hands of the deceased, George, at the date of his death, community property of himself and surviving wife, there is presented by this record no obstacle to her claiming her just proportion thereof. ·Routh v. Routh, 57 .Tex. 589; Hall v. Hall (Tex. Civ. App.) 241 S. W. 624; McCelvey v. Cryer (Tex. Civ. App.) 37 S. W. 175.

We are aware of the fact that what is above said and held is apparently in conflict with certain declarations in the opinion in Corrigan v. Goss (Tex. Civ. App.) 160 S. W. 652, 655. That case dealt with a separation agreement between husband and wife, and, on rehearing and in the last paragraph thereof, it· is said: "Hence it follows that property acquired by either spouse after separation, brought about by such an agreement, becomes the separate property of the one who acquired it, free from the claims of the other, because they are no longer, in law, acting together in their legal capacity of husband and wife. And this partition deed being·valid and binding, it settled all property rights between the parties, including the homestead rights of appellant."

The agreement there involved an "equitable division of property" in view of final separation. There were only "two pieces of real estate" involved in that litigation, and they were "paid for in part with the money which had been allotted to the deceased in said partition," as stated in the findings. The wife claimed: (1) The widow's year's allowance; (2) the allowance in lieu of a homestead; and (3) one-half of the property as community. She was found to have "ample property for her homestead and that no such condition of affairs existed as would justify setting apart to her a homestead." Under these circumstances she was denied recovery. · The separation agreement was found fair, and the charge of coercion and undue influence advanced by the wife against .the· husband, by which she undertook ·to account for the separation, was resolved against her.

· Her claim for .the year's allowance was defeated by the fact that she had property adequate for her maintenance. Article 3478, R. S. 1925. There being no homestead or family relation, as in the case of Linares v. De Linares, supra, and no· coercion or undue influence, necessarily the court ruled against plaintiff's claim: for an allowance in lieu of a homestead. A reasonable interpretation of the opinion and the· record in the case· would warrant the conclusion that the court, ren-

dering that opinion, found that the lots were paid for with the deceased's separate funds or property. If these observations are correct, all the issues before the court were disposed of and the judgment would be correct, separate, and apart from the conclusion or observation embodied in the above excerpt from that opinion.

And it would seem that there was no property involved in that lawsuit acquired after the separation agreement, and ordinarily falling in the classification of community property for the separation agreement to operate on, or calling for a holding on that basis.

So long as the parties are husband and wife, property acquired by either during marriage, except that which is the separate property of either, is deemed the common property of the husband and wife. Article 4619, R. S. 1925; Kearse v. Kearse (Tex. Civ. App.) 262 S. W. 561; Id. (Tex. Com. App.) 276 S. W. 690; Merrell v. Moore, 47 Tex. Civ. App. 200, 104 S. W. 514; Keys v. Tarrant County Building & Loan Ass'n (Tex. Civ. App.) 286 S. W. 593.

Neither the deceased, George,· nor his wife saw fit during his lifetime to dissolve the marriage relation by divorce. That relation was terminated by his death. Had either of them elected to do so, doubtless the relation could have been dissolved, at least under the statute which, under certain circumstances, permits a decree of divorce on the ground that the husband and wife have lived apart as long as ten years, subdivision 4, art. 4629, R. S. 1925; Schulz v. L. E. Whitham & Co., 119 Tex. 211, 27 S.W.(2d) 1093, and thus have avoided the complications arising out of the alleged property rights asserted by this litigation. Having thus left the marriage relation undisturbed, the deceased, George, was charged with the knowledge of the legal consequences of perpetuating the legal and technical marital relations.

Article 4619, R. S. 1925, defining community property, among other things prescribes "all the effects which the husband and wife possess at the time the marriage may be dissolved shall ·be regarded as common effects or gains, unless the contrary be satisfactorily proved." The presumption which obtains that, when the marriage is dissolved, the property found in the possession of either spouse belongs to the community, is not limited to a dissolution of the marriage by death, but applies equally to its dissolution by divorce. Moor v. Moor, 24 Tex. Civ. App. 150, 255 S. W. 231.

In the record before us the plaintiff proved the marriage of herself and husband, his subsequent death, the possession by him at that time of the property involved in this lawsuit, and the fact that there had never been any dissolution of the ·marriage relation by divorce. This made a prima facie case in her

favor on her claim for community property, if we are correct in holding that the separation agreement did not operate upon or in any manner change the nature of property acquired by the deceased after the separation and make the same his separate property. It does not follow, however, that we should here render a judgment in favor of the plaintiff for one-half of such property, since a careful consideration of the testimony as a whole convinces us that it is not conclusive that the property possessed by George at his death is entirely community property of himself and surviving wife, nor does it conclusively appear as to what part thereof is community property, if any. We are dealing with an important issue of fact which should have been submitted to the jury and upon another trial doubtless will be. At any rate the instructed verdict against the plaintiff was not authorized on this phase of the case.

For the reasons assigned, the judgment of the trial court is reversed and the cause remanded.