## TATE v. MOSS.
### No. 3538.

Court of Civil Appeals of Texas. · El Paso.

May 13, 1937.

Rehearing Denied June 17, 1937.

———◇——— -

C. W. Tate, of Odessa, for appellant.

Paul Moss, of Odessa, pro se.

NEALON, Chief Justice.

The parties herein will be designated as they were related to the litigation in the district court. Appellant was plaintiff and appellee was defendant.

Plaintiff in his amended original petition sued defendant for the alleged contract price of certain alleged services, and in the alternative for the value of said alleged services. Defendant interposed a general demurrer which the court sustained. From this judgment plaintiff, apparently not asking for leave to amend further, appeals.

Omitting, for brevity's sake, the formal parts of the amended petition, as well as the somewhat lengthy description of land referred to therein, the amended petition reads: "That on or about April 10th, 1936, defendant Paul Moss was very anxious to make and close a trade with W. A. Martin, Receiver of the Citizens' National Bank of Odessa, Ector County, Texas, who was acting for and in behalf of said bank, and Mrs. Emily Pegues, who was acting for and in behalf, and as guardian, of the estate of Laura Jane Graham, Kyle Boyd Graham, and Ray George Graham, minors, and on said date the said defendant made an agreement, promised and agreed to pay to this plaintiff the sum of Five Hundred Dollars if this plaintiff would represent him and assist him in making a settlement whereby the estate of W. F. Bates, deceased, would be closed as follows, to-wit:" Then follows a description of certain real estate in Ector county, Tex., and 62 shares of stock in the Southland Life Insurance Company, of Dallas, Tex. The pleadings proceeded to allege that defendant was the owner of a judgment which he claimed was a lien on said property; that the guardian, in behalf of said minors, claimed an interest in said property, which was alleged to be a part of the estate of W. F. Bates, deceased; that they were the only heirs of a daughter of said W. F. Bates, who had predeceased her father; that W. A. Martin, as receiver of the Citizens National Bank of Odessa, Tex., was claiming an interest in said estate, and that:

"In pursuance of said employment plaintiff went to work to effect a settlement and make a trade between the parties and finally got the parties to agree as follows, which was very acceptable, and according to the arrangement and employment of said Paul Moss; that the said plaintiff secured a purchaser for said judgment in the person of J. B. Tubb, upon the following terms and conditions: Said J. B. Tubb was to pay the defendant Moss the sum of $17,500 for said judgments; $7,500 (Seven Thousand & Five Hundred Dollars) cash, and $10,000 to be paid to the said defendant in one note, executed by the said J. B. Tubb, due on or before one year from date, bearing 6% interest, and secured by lien against Sections 38, 28, 32, 34, 40, 44, 46, and the North one-half of Section 48, all in Block Number 44, Township Two-South, Ector County, Texas; that the said Paul Moss agreed with this plaintiff that he would do anything by way of his legal services to place the title to the above described land, which his note was to be secured by, in J. B. Tubb, and further that

he would assist this plaintiff in anyway in placing certain Receiver's Certificates in the hands of W. A. Martin, Receiver of said Bank, to satisfy said Receivership of its claim against Bates Estate, and that he would further do anything or render any legal services possible to place in said guardian the title to the following described land, located in Ector County, Texas:" (Here follows description of land which is a part of that included in the first description herein referred to.)

"And that the defendant, Paul Moss, agreed to pay this plaintiff the sum of Five Hundred Dollars ($500.00) cash, and to place in him legal possession of said above mentioned sixty-two (62) shares of Southland Life Insurance Stock, or pay him the value thereof in the sum of Fifteen Hundred Dollars ($1,500.00), in addition to the Five Hundred Dollars ($500.00) above mentioned.

"That after the plaintiff had secured the purchaser for said judgments who was, and is now ready, able and willing to perform his portion of the said contract, and that after the plaintiff had secured the agreement of the said W. A. Martin, Receiver, to submit said offer and to assist in getting the Comptroller of the United States Currency to accept said offer, and after Mrs. Emily Pegues had agreed to accept such offer in behalf of said minor children and submit such offer and endeavor to get same approved by the County Court, defendant, Paul Moss, stated to this plaintiff that he would go no further with said transaction, and has hitherto failed and refused to comply with his agreement, to this plaintiff's damage in the sum of $2,000.00; that after the defendant had failed and refused to comply with his agreement with this plaintiff, with J. B. Tubb, W. A. Martin, Receiver, Mrs. Emily Pegues, Guardian, the plaintiff started negotiations with said W. A. Martin, Receiver, and said Mrs. Emily Pegues, Guardian, and effected a settlement with them with reference to their controversy, and entered into a written agreement with them with reference to same on the 11th day of May, 1936, whereby W. A. Martin, Receiver, was to receive Receiver's Certificates owned and held by Paul Moss, and Mrs. Emily Pegues, as guardian for said minor heirs, was to receive identically the same land that she was to receive in the above mentioned agreement as her interest for said minor heirs.

"Plaintiff alleges that said written agreement was entered into on the 11th day of May, 1936, by defendant, Paul Moss, W. A. Martin, Receiver, and Mrs. Emily Pegues, Guardian. * * *

"That the defendant, Paul Moss, well knew at the time he breached his contract with this plaintiff and refused to go further with said transaction that the said W. A. Martin, Receiver, could not perform the contract that he had agreed with this plaintiff to perform; and that he well knew that Mrs. Emily Pegues, guardian of said minor children, could not perform the contract with this plaintiff in order to effect the original trade without the consent of the said Paul Moss; and that said W. A. Martin, Receiver, and the said Mrs. Emily Pegues, Guardian, are now ready and willing to perform their original contract, secured by the plaintiff, C. W. Tate, and that the said J. B. Tubb, is now ready, able and willing to perform his contract with the said Paul Moss according to the terms above stated.

"Plaintiff says he was the moving cause and leading cause, and the procuring cause, of said trade or exchange as it was finally made between Paul Moss, W. A. Martin, Receiver, and Mrs. Emily Pegues, Guardian; therefore, he was entitled to the promised commission or pay for his services, and to recover the stock and is entitled to the sum of Fifteen Hundred Dollars ($1,500.00), its reasonable value."

Then follow allegations as to the value of plaintiff's services and prayer for recovery upon a quantum meruit.

### Opinion.

The allegations of the petition do not make clear what were the interests and claimed interests of the various parties in the land, or exactly what services plaintiff was to perform. Evidently they were not legal services, for it is alleged that defendant would perform the legal services necessary to place title to the land to be secured by the note of Tubb, which land, by the way, was alleged to belong to the estate of Bates, deceased, and that defendant would render legal services necessary to place title to the other land in the guardian and her wards. The following allegations, however, are express: That as part of the services to be rendered, and actually rendered, under the contract, in addition to securing a purchaser for the judgments, plaintiff secured the agreement

of the receiver to submit the offer and assist in getting the Comptroller of the Currency to accept it, and that likewise the guardian had agreed to accept the offer in behalf of the minor children, submit it, and endeavor to get it approved by the county court. Apparently, the alleged objective could not be attained except through the control of the action of the probate court, the Comptroller of the Currency, and the court which should pass upon the compromise with the receiver. Such a contract would not be binding upon either the receiver or the guardian. It would in fact be a wrongful agreement, unless the apparent results would be to the advantage of the respective estates represented by these fiduciaries. But, in any event, neither the receiver nor the guardian could make a binding contract to procure the results which plaintiff alleges he was to secure.

The receiver of a national bank may compound bad or doubtful debts or sell real or personal property under the direction of the Comptroller of the Currency, and upon the order of a court of record of competent jurisdiction "on such terms as the court shall direct." This is the limit of his authority in such matters. U.S. Code, title 12, § 192 (12 U.S.C.A. § 192).

■ Likewise, Mrs. Pegues, as guardian of the estate of minors, could make no compromises except as authorized by the county court, after complying with the procedure prescribed by article 3430, R.C.S. (as amended by Acts 1935, c. 277, § 1 [Vernon's Ann.Civ.St. art. 3430]). See Browne v. Fidelity & Deposit Co., 98 Tex. 55, 80 S.W. 593.

It is not made to appear whether or not the estate of W. F. Bates was in course of administration when the alleged agreement was entered into or when suit was brought; nor was it alleged that the Bates minors were the only heirs of the deceased W. F. Bates. If it was being administered, only the administrator or executor could convey property to satisfy said judgments, and then only after compliance with and in conformity to article 3430, unless the executor were independent. The discretion involved would be the court's, not the administrator's.

■ Since the alleged contract could not be enforced, no actionable wrong could result from a refusal to proceed with it.

As to the probable invalidity of this class of contracts generally, see Specht v. Collins, 81 Tex. 213, 16 S.W. 934; Bacle v. Pickens (Tex.Civ.App.) 78 S.W.(2d) 260; Kearse v. Kearse (Tex.Civ.App.) 262 S.W. 561.

We think the trial court was justified in sustaining defendant's general demurrer.

Judgment is affirmed.